DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Antonio D. Fitzgerald, appeals from his conviction in the Summit County Court of Common Pleas for one count each of conspiracy to commit aggravated burglary, conspiracy to commit aggravated robbery, and conspiracy to commit kidnapping, all felonies of the second degree. We affirm.
 I. {¶ 2} Appellant met Hani Faris sometime in 2005 at a game room in Summit County. Both men were frequent patrons of several game rooms, where they played electronic slot machines. Faris was also an acquaintance of Detective William Pelfrey of the Akron Police Department. From time to time, Faris acted *Page 2 
as a confidential informant for Pelfrey, a detective on the police department's vice squad.
 {¶ 3} On September 12, 2005, Faris went to a game room intending to tamper with one of the machines to improve his chances of winning. Appellant, who had been banned from that particular game room by the management, waited outside. He had previously shown Appellant how to make the adjustments to the machine, and the men had intended to split Faris' winnings from this machine. Faris was unsuccessful, and while he was driving Appellant home, Appellant began to devise a plan to rob Michael Moneypenny, an acquaintance of Faris who owned a large number of slot machines. Appellant told Faris that he and at least one other person would take Moneypenny hostage in his home, threatening Moneypenny with a gun and pistol-whipping him if necessary. Appellant also said that he would give Faris a one-third share of the money from the robbery if Faris would show Appellant where Moneypenny lived.
 {¶ 4} The morning after this conversation, Faris called Pelfrey several times, leaving a number of urgent-sounding voicemails asking Pelfrey to call him back. Pelfrey returned the call later in the day, and Faris asked to meet with Pelfrey. During the meeting, Faris reported what Appellant had told him. Pelfrey put together a team of officers and a plan of operation and instructed Faris to report back if Appellant attempted to contact him. *Page 3 
 {¶ 5} On September 16, 2005, Appellant left a voicemail for Faris, who then contacted Pelfrey. Pelfrey began to assemble his team of officers and met with Faris to fit him with a listening device and transmitter. Faris and Appellant arranged to meet in a parking lot. Appellant believed that Faris was going to show him the location of Moneypenny's house, although the officers instructed Faris not to take Appellant to the actual location of the house. While en route, Faris engaged Appellant in conversation, inducing Appellant to discuss the plans for the robbery, as Akron Police Detective Adam Wahl listened to the transmissions from the listening device in his office and relayed information by radio to the team of officers preparing to pursue the vehicle. Wahl also tape recorded the contents of the transmissions. Eventually, police officers stopped the vehicle and Appellant was arrested. He was indicted on six second-degree felony charges: one count of conspiracy to commit kidnapping against Moneypenny, in violation of R.C. 2905.01(A)(1)-(3) and R.C. 2923.01; one count each of conspiracy to commit kidnapping against Moneypenny's wife and child, in violation of the same sections; one count of conspiracy to commit aggravated robbery against Moneypenny, in violation of R.C. 2911.01(A)(1)-(3) and R.C.2923.01; one count of conspiracy to commit aggravated robbery against Moneypenny's wife and/or child, in violation of the same sections; and one count of conspiracy to commit aggravated burglary, in violation of R.C. 2911.11(A)(1)-(2). *Page 4 
 {¶ 6} A jury trial was held, and the State's first witness was a police officer from the University of Akron Police Department, Cpl. Robert Stachowiak. Because of the poor audio quality of the 11 minute taped conversation between Faris and Appellant, Stachowiak re-recorded the contents of the tape onto a computer. He then digitally filtered out some of the background noise from the tape and added a video track containing a transcript of the discussion synchronized with the audio. A DVD of the conversation, consisting of the video transcript and the filtered audio, was admitted into evidence as State's Exhibit B and played at the trial, but the original cassette tape was not played and the trial judge overruled Appellant's motion to admit the tape as evidence. Stachowiak testified that as he prepared the video transcript from the filtered audio recording, if he had any uncertainty about a word that Faris or Appellant had used, he inserted a notation into the transcript that the word was unintelligible. Stachowiak also received a transcript prepared by Pelfrey at the same time that he received the tape, but Stachowiak's testimony indicated that when he prepared his own transcript, he relied on the filtered recording rather than on Pelfrey's transcript. He also testified that he would "guarantee * * * 90 to 95 percent accuracy" in the transcript. Appellant was found guilty on the charge of conspiracy to commit aggravated burglary and on the charges of conspiracy to commit robbery and kidnapping against Moneypenny only. He was sentenced to four years in prison on each count, running concurrently, plus six months for a probation violation, for a total *Page 5 
sentence of four and a half years. Appellant timely appeals from his conviction, asserting six assignments of error.
 II. A. First Assignment of Error "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE TRIAL TO GO FORWARD DESPITE THE COURT'S AWARENESS THAT A JUROR HAD FALLEN ASLEEP DURING TESTIMONY."
 {¶ 7} When Appellant was permitted to speak during his sentencing hearing, he told the judge that he did not believe he had received a fair trial, in part because one of the jurors had fallen asleep during the testimony. Appellant now asserts that the trial court should have attempted to determine whether the remainder of the jurors had been affected and either declared a mistrial or dismissed the offending juror and instructed the other jurors accordingly. Appellant further claims that the trial court's failure to take action constitutes plain error, and that the issue may therefore be raised on appeal even though Appellant did not raise an objection when the juror fell asleep.
 {¶ 8} Initially, we must note the distinction between the waiver of an objection and the forfeiture of an objection. Although the terms are frequently used interchangeably, a waiver occurs where a party affirmatively relinquishes a right or an objection at trial; a forfeiture occurs where a party fails to assert a right or make an objection before the trial court in a timely fashion. State v.Hairston, *Page 6 
9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 9, quoting United Statesv. Olano (1993), 507 U.S. 725, 733. Where a party has forfeited an objection by failing to raise it, the objection may still be assigned as error on appeal if a showing of plain error is made. Hairston at ¶ 9, quoting State v. McKee (2001), 93 Ohio St.3d 292, 299 fn. 3 (Cook, J., dissenting); Crim.R. 52(B). Where a party has affirmatively waived an objection, however, the error may not be asserted on appeal even if it does amount to plain error. Id.
 {¶ 9} Where juror misconduct occurs during the course of a criminal trial, the reviewing court must determine whether the misconduct materially prejudiced the defendant's substantial rights. State v.Taylor (1991), 73 Ohio App.3d 827, 832, quoting State v. Hipkins (1982),69 Ohio St.2d 80, 83. Where the misconduct involves a juror falling asleep during the trial, a showing of prejudice typically requires some indication on the record that the juror missed a large or critical portion of the testimony. See State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046, at ¶ 186-187; State v. Sanders (2001),92 Ohio St.3d 245, 253. "A trial court `has considerable discretion in deciding how to handle a sleeping juror.'" Sanders, supra at 253, quoting United Statesv. Freitag (C.A.7, 2000), 230 F.3d 1019, 1023.
 {¶ 10} From the trial transcript, it is not clear at what point during the trial the juror fell asleep. During the sentencing hearing, however, in response to Appellant's concerns regarding this irregularity, the trial judge stated: *Page 7 
 "The Court was aware that we had one juror that was falling asleep. I brought both attorneys side bar [sic], told them about that, asked them what they wanted to do. We all decided we would continue to watch that juror. The juror never fell asleep again.
 "She was nodding off. It's very common. The Court was very aware that she never did that again. And I was very aware of what that particular juror was doing."
 {¶ 11} Appellant, therefore, did not merely forfeit his objection by failing to object. Rather, he waived the objection by agreeing with the judge and the prosecutor that there was no need to remove the juror at that point in the trial. Because the error was affirmatively waived at the trial level, it may not be raised on appeal even if it was plain error. See Hairston, supra at ¶ 9.
 {¶ 12} Even if an argument as to plain error could have been raised in this case, there has been no showing that any prejudice resulted from the error. It is apparent from the trial judge's comments that the juror did not fall asleep repeatedly or for an extended period of time, but only "nodd[ed] off at one point during the trial. Thus, the juror did not miss any large portion of the trial, and without some indication as to when during the trial the juror fell asleep, it is unclear whether any portions that the juror might have missed were critical portions. See Sanders, supra at 253; McKnight, supra at ¶ 186-7.
 {¶ 13} In Sanders, an attorney noted during an on-the-record sidebar that one juror's eyes were closed for an hour and fifteen minutes and the juror was motionless for a half hour. Sanders, supra at 252. There were also indications that one juror — although it is not clear whether it was the same juror or a different one — *Page 8 
had fallen asleep during another portion of the testimony. Id. at 253. Nevertheless, the Ohio Supreme Court found no plain error in the absence of some indication as to what portions of the testimony the juror missed. Id. The scant indications in the record of the present case suggest a far less severe instance of one juror briefly nodding off, and without any indication as to what testimony the juror might have missed, Appellant has not met his burden of showing that any error was prejudicial. Appellant's first assignment of error is overruled.
 B. Second Assignment of Error "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT FAILED TO DECLARE A MISTRIAL IN THE FACE OF PREJUDICIAL AND MISLEADING STATEMENTS OF A WITNESS."
 {¶ 14} Faris testified that Appellant told him that he had previously participated in similar robberies and that Appellant intended to hold a gun to Moneypenny's head and pistol-whip him if Moneypenny would not give his money to Appellant. At two points during his testimony, Faris alluded to this exchange. The first time, Faris testified:
 "[Appellant] said he was going to put a gun to Moneypenny's head, slap him a couple times with the gun. If he don't get the money, he'll put it in his wife's head. One way or another, he [sic] going to get the money."
Faris then stated that the police officers wanted him to induce Appellant to repeat those statements on the listening device that Faris wore. *Page 9 
 {¶ 15} Later, the prosecutor asked Faris whether there had been any discussion during the first, unrecorded conversation as to what Appellant would do if Moneypenny's wife and child were in the house. Faris explained that when he asked Appellant that question, Appellant responded "[A] couple slap[s] and [a] gun in the face, he will give the money. I've done that before. I know how to do it."
 {¶ 16} Appellant now claims that the court erroneously failed to declare a mistrial after the jury heard this testimony. Appellant first argues that the statement "I've done that before" was inadmissible other-acts evidence under Evid.R. 404(B). Appellant further argues that the prejudicial value of the testimony outweighed the probative value and that the testimony therefore should not have been admitted under Evid.R. 403(A). Finally, Appellant argues that this evidence was so prejudicial that it could not have been cured by an instruction to the jury.
 {¶ 17} Appellant did not raise any objection at the trial level and did not move for a mistrial at the conclusion of testimony. An issue that could have been *Page 10 
raised in the trial court but was not cannot be considered for the first time on appeal and is forfeited.[1] See Sekora v. Gen. MotorsCorp. (1989), 61 Ohio App.3d 105, 112. In fact, the trial judge raised the issue of a possible mistrial sua sponte, and apparently on a basis somewhat different from the one now asserted by Appellant for the first time. When the judge called the attorneys to sidebar, she stated:
 "I waited because I wanted to see what the transcript said, but two times this witness indicated that he said don't you — you don't need to worry because I've done this before. There is nothing like that on the transcript, and arguably, you've got a mistrial based on those. * * * If it had been on the transcript, I would have let it slide[,] but two times it was said. That's an unbelievable prejudicial statement, as well as other statements that were made by this witness that aren't even close to being on this tape." (Emphasis added.)
 {¶ 18} The judge then gave the following cautionary instruction to the jury:
 "First of all, I want to make sure that you realize that nowhere on this transcript does it ever indicate this defendant has ever done anything like this before. And, second, nowhere on this transcript does it indicate that the defendant stated he was going to hold a gun to anyone's head.
 "[The attorneys] can ask some follow-up questions on that, but I think that needs to be clarified." *Page 11 
 {¶ 19} The trial judge's primary concern was apparently to assure that the jurors did not confuse the statements to which Faris testified with the statements contained in the audio recording and the transcript. When the prosecuting attorney continued to question Faris after the cautionary instruction was given, Faris clarified that the exchange occurred during the first conversation, which was not recorded. At no time did Appellant move for a mistrial on the basis of improperly admitted character evidence; nor did Appellant object to the testimony or to the trial judge's decision to admit the testimony with the cautionary instruction. Because Appellant has forfeited this argument, the second assignment of error is overruled.
 C. Third Assignment of Error "THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT DENIED THE DEFENDANT-APPELLANT'S MOTION FOR A JUDGMENT OF ACQUITTAL."
 Fourth Assignment of Error "DEFENDANT-APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 20} R.C. 2923.01(A)(1) provides that a conspiracy exists where an individual, along with another person or persons, "plan[s] or aid[s] in planning" certain specified offenses, including kidnapping, aggravated burglary, and aggravated robbery. Furthermore, R.C. 2923.01(B) requires that an individual must commit a "substantial overt act in furtherance of the * * * conspiracy" in order *Page 12 
to be convicted of conspiracy and defines an act as substantial and overt when it "manifests a purpose on the part of the actor that the conspiracy should be completed." In the third and fourth assignments of error, Appellant contends that the State presented insufficient evidence of these two elements and that the trial court therefore erred in denying Appellant's Crim.R. 29 motion for acquittal. Appellant also contends that the conviction was against the manifest weight of the evidence.
 {¶ 21} As a preliminary matter, we observe that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 22} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates "that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 23} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge *Page 13 
questions whether the [S]tate has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 24} Sufficiency of the evidence is required to take a case to the jury; therefore,
 "a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 25} In the present case, we do not believe that the jury lost its way in finding Appellant guilty of conspiracy. Appellant contends that there is no evidence in the record to support a finding that Faris planned or aided in planning the underlying offenses in this case. R.C.2923.01, however, does not require that both parties intend to commit the offenses. A conspiracy may be "unilateral," that is, one party who plans the underlying crime may still be guilty of conspiracy even *Page 14 
if the other party does not act with the requisite culpable mental state but merely feigns agreement. State v. Styles (Jul. 5, 1995), 9th Dist. No. 94CA005998, at *2; State v. Marian (1980), 62 Ohio St.2d 250, syllabus. Even if Faris intended to foil the plan from the very moment that Appellant began to discuss it with him, Appellant may still be guilty of conspiracy because he discussed his intentions with Faris for the purpose of planning the underlying crimes. A number of statements appeared on the audiotape in which Appellant told Faris that Faris would receive a share of the money from the robbery if Faris would show Appellant where Moneypenny lived. Faris also testified to a number of statements from a prior conversation, which did not appear in the audiotape, in which Appellant initially made the request for Faris to show him where Moneypenny lived.
 {¶ 26} Appellant also contends that the State presented no evidence of any substantial, overt act in furtherance of the conspiracy. An act in furtherance of a conspiracy is substantial if "it is of a character that manifests a purpose on the part of the actor that the object of the conspiracy should be completed." State v. McDay (Sept. 20, 2000), 9th Dist. No. CA19610, at *6, quoting R.C. 2923.01(B). Such an act is an overt act if it is "done outwardly, without attempt at concealment, and performed pursuant to and manifesting a specific intent or design." Id., quoting State v. Papp (1980), 68 Ohio App.2d 21, 23. *Page 15 
 {¶ 27} Appellant committed several substantial, overt acts. Again, some of these were recorded on tape, while Faris testified to others. Appellant discussed compensation with Faris, promising Faris a third of the money from the robbery if Faris would show Appellant where Moneypenny lived. Appellant then got into a car with Faris for the express purpose of locating Moneypenny's house and planning his entry into the house. All of these acts, combined with Appellant's statements during the course of the acts, demonstrate an intent to commit robbery, burglary, and kidnapping. Based on this evidence, the jury did not lose its way in concluding that these acts were committed in furtherance of the conspiracy and that the acts were substantial and overt. Appellant's third and fourth assignments of error are overruled.
 D. Fifth Assignment of Error "THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE'S WITNESSES TO TESTIFY ABOUT A WRITTEN TRANSCRIPT OF AN AUDIOTAPE."
 {¶ 28} Although Appellant's assignment of error purports to contest the admission of testimony pertaining to the transcript of the audio recording, Appellant's entire argument relates to the admissibility of the transcript itself. We will therefore address only the admissibility of the transcript.
 {¶ 29} Appellant argues that the trial court's decision to admit the video transcript of the audio recording was contrary to Evid.R. 1002, the "Best Evidence *Page 16 
Rule." A trial court's admission of evidence is reviewed for abuse of discretion. State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶ 79. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v. OhioState Med. Bd. (1993), 66 Ohio St.3d 619, 621.
 {¶ 30} Appellant cites a case from the Eighth District Court of Appeals, Harleysville Mut. Ins. Co. v. Santora (1982),3 Ohio App.3d 257, 261, for the proposition that Evid.R. 1002 prohibits the admission of a transcript to supplement a recording when the reliability of the recording is questionable. Appellant notes that portions of the recording were inaudible and that Officer Stachowiak, who rerecorded the original cassette and transcribed the recording, was not qualified as an expert witness and has no qualifications as a transcriptionist. Appellant also points out that Stachowiak was 90 to 95 percent certain that his transcript was accurate, not 100 percent. Therefore, Appellant contends, the recording was not reliable enough to permit the trial court to admit a transcript.
 {¶ 31} The Eighth District has since disapprovedHarleysville, holding that Evid.R. 1002 does not prohibit the admission of a transcript of a recording into evidence as an aid to the jury where the recording itself is also admitted. State v. Graves (Oct. 6, 1994), 8th Dist. No. 66238, at *4. Evid.R. 1002 generally requires *Page 17 
that an original recording be admitted into evidence in order to prove the contents of the recording, while Evid.R. 1003 allows for the admission of a duplicate recording if there is no genuine issue as to authenticity and it would not be unfair to admit the duplicate. Neither section precludes the admission of a transcript of the recording for the purposes of supplementing the recording itself where either the original recording or a duplicate recording has also been admitted.Graves, supra at *4; In Re Garrett (July 31, 1996), 1st Dist. No. C-950243, at *3.
 {¶ 32} Two other cases on the topic of transcripts are worth noting, although neither case addresses the issue specifically in the context of Evid.R. 1002 or Evid.R. 1003 because the trial courts in those cases apparently did not admit the transcripts of audio recordings into evidence. This Court held in another conspiracy case that a trial court does not abuse its discretion in allowing the jury to view a transcript of a recorded conversation while listening to the recording, where no material inaccuracies in the transcript are demonstrated at the trial level, the recording is of poor quality, and witnesses provide corroborating testimony from their independent knowledge as to the contents of the conversation. State v. Blankenship (May 22, 1985), 9th Dist. No. 2050, at *2. The Blankenship Court specifically distinguished that case from Harleysville, noting that in the latter case, the transcript contained material errors and the recording did not contain the actual occurrence of a crime, i.e., the statements that in themselves amounted to a conspiracy. Id. at fn 1. More recently, the Ohio Supreme Court held that *Page 18 
supplementing a recording with a transcript is not prejudicial error if there are no material differences between the recording and the transcript. State v. Waddy (1992), 63 Ohio St.3d 424, 445, superseded on other grounds in State v. Smith (1997), 80 Ohio St.3d 89. Absent a showing that the accused has suffered material prejudice, an appellate court will not disturb a trial court's decision to admit or exclude evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129.
 {¶ 33} We find that neither Evid.R. 1002 nor Evid.R. 1003 prohibits the admission of the transcripts into evidence where, as here, the recording itself is also admitted. See Graves, supra at *4;Garrett, supra at *3. Furthermore, even if it had been erroneous to admit the transcripts, Appellant has not identified any specific material inaccuracies, and Stachowiak testified that he made a notation on the transcript wherever he had any doubts as to the content of the discussion. Stachowiak also informed the jury that he believed the transcript to be 90 to 95 percent accurate, making the jury well aware that the transcript was not necessarily infallible, accurate though it may have been. To the extent that errors may have existed in the transcript, the jury would also have had access to the recording, and the jurors would certainly rely on the tape rather than the transcript if they discovered a material discrepancy between the two. SeeGraves, supra at *4. Faris, Stachowiak, and Wahl all authenticated the recording, and Faris' testimony as to both the recorded conversation and the unrecorded conversation was consistent with the contents of the transcript. Given the numerous assurances *Page 19 
of a reliable transcript in the present case and the absence of a conflict with Evid.R. 1002 and 1003, the trial court did not abuse its discretion in allowing the jury to view the transcript or in admitting the transcript into evidence. Appellant's fifth assignment of error is overruled.
 E. Sixth Assignment of Error "THE DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS VIOLATED IN THAT HIS APPOINTED COUNSEL WAS INEFFECTIVE."
 {¶ 34} Appellant finally asserts that his appointed trial counsel was ineffective for two reasons: first, his attorney did not request that the trial judge remove the sleeping juror, and second, his attorney did not move for a mistrial in light of certain statements that Faris made while testifying.
 {¶ 35} The Sixth Amendment to the United States Constitution guarantees a criminal defendant the effective assistance of counsel.McMann v. Richardson (1970), 397 U.S. 759, 771. Courts employ a two-step process to determine whether the right to effective assistance of counsel has been violated:
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984), 466 U.S. 668, 687. *Page 20 
 {¶ 36} An attorney properly licensed in Ohio is presumed competent.State v. Lott (1990), 51 Ohio St.3d 160, 174. The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. State v. Smith (1985), 17 Ohio St.3d 98, 100. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *5, citing Strickland, 466 U.S. at 690. As a matter of law, an attorney's decision as to whether or not to object at certain times during trial is presumptively considered a trial tactic or strategy. State v. Downing, 9th Dist. No. 22012, 2004-Ohio-5952, at ¶ 23, citing State v. Fisk, 9th Dist. No. 21196, 2003-Ohio-3149, at ¶ 9; State v. Phillips (1995), 74 Ohio St.3d 72, 85. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
 {¶ 37} As to the issue of the sleeping juror, we note once again that the record contains no indication as to what portions of the trial, if any, the juror missed. Indeed, the trial judge indicated on the record that the juror merely nodded off at one point during the trial. Without any indication that the juror missed a large or critical portion of the trial, Appellant has not met his burden of showing that the juror's conduct was prejudicial. See Sanders, supra at 253; *Page 21 McKnight supra, at ¶ 186-7. Therefore, we cannot find that the result of the trial would have been different if Appellant's counsel had sought to remove the juror. In fact, given that the attorneys and the judge apparently all agreed that it would not be necessary to remove the juror, it is especially reasonable to believe that Appellant's counsel had sound strategic reasons not to object, and that he was therefore functioning as the counsel guaranteed by the Sixth Amendment.
 {¶ 38} As to the issue of Faris' statements, Appellant cites no specific portions of the testimony to show where he believes trial counsel should have objected. Appellant does, however, reference the same sidebar conference discussed in the second assignment of error, in which the trial judge expressed concern as to the potentially prejudicial effect of Faris's testimony that Appellant had admitted to similar previous crimes and that Appellant intended to intimidate his victim by pistol-whipping him. Although Appellant's argument in the second assignment of error was premised on the admissibility of the statements as other-acts evidence, Appellant here states that trial counsel should have objected to the testimony as inadmissible hearsay evidence. The hearsay rule, however, does not preclude the sort of testimony that Faris gave as to Appellant's statements. See Evid.R. 801(D)(2)(a) (admissions by party opponent not hearsay), Evid.R. 803(3) (hearsay exception for declarant's statement of then-existing mental condition, e.g. intent). Because these statements either were not hearsay or fell under a *Page 22 
recognized hearsay exception, Appellant was not prejudiced by trial counsel's failure to object to the testimony on the basis of hearsay.
 {¶ 39} Furthermore, Appellant has again failed to show that counsel's failure to request a mistrial on the basis of Faris' testimony amounted to anything other than sound trial strategy. We cannot say, based on the record before us, that Appellant's counsel failed to act as the counsel guaranteed by the Sixth Amendment. Appellant's sixth assignment of error is overruled.
 III. {¶ 40} All six assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). *Page 23 
The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J. WHITMORE, J. CONCUR
(Baird, J., retired, of the Ninth District Court of Appeals, sitting by assignment pursuant to, § 6(C), Article IV, Constitution.)
[1] As noted previously, modern courts tend to use the terms "waived" and "forfeited" interchangeably. Although the Sekora Court used the term "waived" in this context, our recent analysis in Hairston makes the distinction clear. A mere failure to raise the issue, as opposed to an affirmative waiver, constitutes a forfeiture. *Page 1