OPINION
{¶ 1} This is an appeal by defendant-appellant, Antonio Smith, from a judgment of sentence and conviction entered by the Franklin County Court of Common Pleas, following a jury trial in which appellant was found guilty of kidnapping and aggravated robbery.
 {¶ 2} On March 18, 2004, appellant was indicted on one count of kidnapping, in violation of R.C. 2905.01, one count of aggravated robbery, in violation of R.C. 2911.01, one count of aggravated murder, in violation of R.C. 2903.01, and one count of having *Page 2 
weapon while under disability, in violation of R.C. 2923.13. The counts charging appellant with kidnapping, aggravated robbery and aggravated murder all contained a one-year and a three-year firearm specification.
 {¶ 3} The indictment against appellant arose out of the shooting death of Michael Bailes on August 24, 2003. The matter came for trial before a jury beginning November 18, 2005. The facts indicate that Bailes, a truck driver from Oklahoma, traveled to Columbus in August of 2003 with a tractor trailer to make a delivery.
 {¶ 4} Briefly, the state's theory of the case may be summarized as follows. On August 24, 2003, after dropping off his trailer, Bailes drove his rig along Cleveland Avenue, apparently attempting to purchase drugs. Appellant and his brother, Daylin Smith (hereafter "Smith"), were walking along Cleveland Avenue when they encountered Bailes; the brothers gained entrance to Bailes' truck under the pretense they could obtain crack cocaine for him, while their actual intent was to rob him of money. After appellant and his brother entered the truck and rode a short distance with Bailes, appellant pulled out a handgun and shot Bailes in the back of the head. Smith then took money that had been in Bailes' wallet, and both men fled the scene.
 {¶ 5} Smith, who received a 13-year sentence for his part in the events leading to Bailes' death, entered a guilty plea to involuntary manslaughter and aggravated robbery, and agreed to testify against his brother. At the time of the events, Smith was involved with various drugs, including crack cocaine, cocaine, Ecstasy and marijuana. On the morning of August 24, 2003, prior to their encounter with Bailes, Smith told appellant they "might as well find a way to make some money." (Tr. Vol. VIII, at 1464.) Smith testified *Page 3 
that he and his brother were both carrying firearms at the time; specifically, Smith had a .38 special handgun, while appellant was carrying a .32 Colt pistol.
 {¶ 6} As the brothers were walking along Cleveland Avenue, they observed a red and white semi-truck traveling slowly down the street. Smith made eye contact with the driver, then ran up to the truck, jumped in the passenger side and began talking to Bailes. Smith acknowledged his intent was to rob the driver. Bailes asked Smith if he had some "crack." (Tr. Vol. VIII, at 1468.) Smith jumped down from the truck, and told appellant, "look, the guy wants some crack, man, plus he can give us a ride where we're going, to chill." (Tr. Vol. VIII, at 1469.) Smith got in the passenger seat, and appellant climbed into the back of the cab. Smith began talking to Bailes, and, as they were riding, Bailes showed Smith some money from his wallet. Smith started to light up a cigarette, and, as he turned around to hand his brother a cigarette, he saw appellant holding his firearm.
 {¶ 7} A police car was in the area, and Bailes became alarmed and turned onto Republic Avenue, heading the wrong way on a one-way street. Bailes then turned into an alley, and Smith heard "a pop" sound. (Tr. Vol. VIII, at 1477.) According to Smith, he was "shocked" by the fact a shot had been fired. (Tr. Vol. VIII, at 1478.)
 {¶ 8} The truck eventually came to a stop, and Bailes was bleeding. Smith and appellant exited the passenger side of the truck, and Smith grabbed the money he had earlier observed in Bailes' wallet. Smith and appellant then walked away from the scene. Smith used the $50 he obtained from Bailes to purchase drugs.
 {¶ 9} After he got home, Smith, who had some blood on his clothing, noticed a .32 shell casing in his clothing. After changing his clothing, Smith and appellant asked a female friend, Brandy Person, to drive them to the shooting scene. Upon arriving near *Page 4 
the area, they observed police cars and an ambulance, and they drove away. Smith was subsequently interviewed by police detectives. When initially asked by a detective whether he knew anything about the incident, Smith responded, "I heard somebody say my brother did this, he said he did it or something, but I wasn't there." (Tr. Vol. VIII, at 1494.) According to Smith, he was scared, so he began to tell the detectives what happened. Smith acknowledged that he lied to the detectives about not having a firearm that day.
 {¶ 10} On the morning of August 24, 2003, Larry Jones, who resides on Republic Avenue, observed a semi-truck heading the wrong way on Republic Avenue. Jones testified that the driver pulled into an alley, and two African-American males entered the passenger side of the truck. A short time later, Jones heard a single "pop sound." (Tr. Vol. VIII, at 1403.) Jones heard the truck engine accelerate, and then it (the engine) just "died down." (Tr. Vol. VIII, at 1402.) Jones subsequently observed the two black males behind the truck approach the driver's side, and then saw the two men walking away. Approximately 20 minutes later, Jones approached the truck and noticed a white male in the truck with his head down. Jones told his wife to call 911.
 {¶ 11} Columbus police officers were dispatched to the scene, and Officer Frederick Brophy approached the truck and observed a middle-aged white male slumped over inside. Officer Brophy attempted to talk to the man but he was non-responsive. The victim had suffered a gunshot wound to the back of the head on the right side. Although Bailes was alive at the time officers arrived, he died a short time later from the wound following unsuccessful surgery. *Page 5 
 {¶ 12} Person testified that she dated appellant for approximately six months during 2003. On August 24, 2003, Person gave appellant and his brother, Smith, a ride to a nearby shopping center. After dropping them off at the shopping center, she next saw them about two hours later, at approximately 3:00 or 4:00 p.m. At that time, appellant asked her to drive them to his cousin's house.
 {¶ 13} As they were traveling on Cleveland Avenue, they noticed a number of police officers at a location and Person had an "eerie feeling," wondering whether appellant and his brother had "done something." (Tr. Vol. IX, at 1629.) After driving past the police officers, appellant told Person, "we can go back home." (Tr. Vol. IX, at 1629.) Later, appellant and his brother told Person: "He wanted to buy drugs, something went wrong. The guy got upset and they shot him in the back of the head." (Tr. Vol. IX, at 1634.) According to Person, Smith first stated that he "did it," but appellant stated, "no, I did it. I shot him." (Tr. Vol. IX, at 1634-1635.) Appellant told Person that he shot the man in "[t]he back of the head." (Tr. Vol. IX, at 1635.) Person ended her dating relationship with appellant in November of 2003, and she was interviewed by police detectives in 2004.
 {¶ 14} In August of 2003, Robin Sellers resided with Person at an apartment complex on Westerville Road. On August 24, 2003, Person gave appellant and his brother, Smith, a ride. Later, appellant and Smith returned to the apartment with beer, and they were "real ecstatic, all excited." (Tr. Vol. IX, at 1681.) The brothers, who were also using marijuana, turned on the television set, and Smith stated: "[T]hat mother fucker bled on me." (Tr. Vol. IX, at 1681.) Later, appellant and his brother "were saying come on, let's go. Go check it out[.]" (Tr. Vol. IX, at 1684.) The brothers left with Person, and, *Page 6 
after they returned to the apartment, they talked about "how the cops and stuff were all up there." (Tr. Vol. IX, at 1686.)
 {¶ 15} The next day, Sellers asked appellant and Smith, "[d]id you do that. * * * Did you shoot that guy?" (Tr. Vol. IX, at 1687.) Smith responded, "[n]o, that was my brother." (Tr. Vol. IX, at 1687.) Sellers looked over at appellant and asked if he "did it." (Tr. Vol. IX, at 1688.) Appellant "just smiled real big, and he was like, yeah, it was me, bro." (Tr. Vol. IX, at 1688.) Appellant told Sellers, "you better not tell anybody." (Tr. Vol. IX, at 1689.) Sellers asked why he shot the man, and he told her that they were attempting to rob him, and "I guess he started fighting so he got shot." (Tr. Vol. IX, at 1689.) Sellers had previously seen appellant with a firearm, which she described as "a small silver automatic handgun." (Tr. Vol. IX, at 1690.) Sellers also knew that Smith carried a revolver.
 {¶ 16} Several months later, in December of 2003, after Sellers had moved away from the apartment and "felt safe enough to do so," she called "Crime Stoppers" and reported that she knew who had committed the crime. (Tr. Vol. IX, at 1691.) Sellers subsequently spoke with police detectives about the incident.
 {¶ 17} Following the presentation of evidence, the jury returned verdicts finding appellant guilty of kidnapping and aggravated robbery, as well as the one-year firearm specifications attached to those counts. The jury returned a verdict of not guilty as to the aggravated murder count, and was unable to reach a unanimous verdict as to the lesser-included offense of murder. The charge of having weapon while under disability was tried separately to the court, and the court found appellant guilty of that offense. The trial court sentenced appellant by entry filed October 19, 2006. *Page 7 
 {¶ 18} On appeal, appellant sets forth the following seven assignments of error for this court's review:
 First Assignment of Error: The court abused its discretion in forbidding recross-examination of the state's key witness.
 Second Assignment of Error: The court erroneously allowed amendment of the kidnapping count of the indictment in a manner changing the identity of the offense.
 Third Assignment of Error: The evidence was legally insufficient to establish appellant was guilty of kidnapping, either as the principal offender or as a complicitor.
 Fourth Assignment of Error: The evidence was legally insufficient to establish appellant was guilty of aggravated robbery, either as the principal offender or as a complicitor.
 Fifth Assignment of Error: The court erroneously overruled appellant's motion for acquittal pursuant to Criminal Rule 29.
 Sixth Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
 Seventh Assignment of Error: The court erroneously imposed consecutive sentences and sentences in excess of the statutory minimum for an offender who has not previously served time in prison.
 {¶ 19} Under his first assignment of error, appellant asserts the trial court abused its discretion by precluding recross-examination of his brother, Smith. Appellant maintains that recross-examination was crucial to challenge the credibility of the state's key witness.
 {¶ 20} By way of background, following the state's redirect examination of Smith, defense counsel requested the opportunity to recross-examine him about matters raised on redirect. More specifically, defense counsel requested recross-examination to "ask him if his story continued to change because he wanted to save himself from getting *Page 8 
charged with aggravated murder." (Tr. Vol. VIII, at 1569.) The trial court declined to allow recross-examination, finding, "based upon that, I think that was the essence of your cross-examination." (Tr. Vol. VIII, at 1569.) Following the trial court's decision to deny recross-examination, defense counsel made the following proffer of questions counsel would have asked on recross-examination:
 I would have asked Mr. Smith who would make the determination whether he's complied with his proffered agreement. And the determination is made by the prosecutor. So he has to put on a show for the prosecution.
 I would have asked him in response to the question about what he first told the police, that the reason he told them what he told them was because he was scared and it got him off the hook.
 * * * I would have asked, in response to the question about whether he lied about who shot Michael Bailes, that isn't it true you did tell them different stories about how Michael Bailes was shot, and various things that happened prior to, during and after the shooting.
 I would have asked him if he told them, the police, on February fifteen, two-thousand-four, that he thought he needs to answer in order to get out of it.
 I would have asked him in his interview January fifteen, two-thousand-five if he changed his story because they, he believed they didn't agree with his story about what happened.
 I would have asked him if he was running the show as to the robbery.
 I would've asked them if he believed the police were trying to trick him in questioning him.
 And I would have asked him — he indicated on redirect for the first time that a runner told him that the police were coming. So I would have asked him if he expected the police to be there ahead of time to get his story straight. *Page 9 
 And I would have last asked him if he pled guilty to causing the death of Michael Bailes during the course of a robbery.
(Tr. Vol. VIII, at 1573-1574.)
 {¶ 21} The scope of cross-examination is governed by Evid.R. 611(A), which provides: "The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." The Ohio Supreme Court has observed: "Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, * * * the opportunity to recross-examine a witness is within the discretion of the trial court." State v. Faulkner (1978),56 Ohio St.2d 42, 46. Courts have further held it is "only when a prosecutor, on redirect-examination, delves into new areas that a trial court must allow recross-examination by a defendant." State v. Carter (Feb. 22, 1995), Crawford App. No. 3-94-21.
 {¶ 22} In the present case, appellant cannot show an abuse of discretion by the trial court as the matters counsel sought to inquire about on recross-examination had been, as found by the trial court, already explored by counsel during cross-examination. The record reflects that defense counsel, during cross-examination, questioned Smith regarding his initial contact with the police; in response, Smith testified that he told the police his brother was involved because the police "had me scared." (Tr. Vol. VIII, at 1513.) Also during cross-examination, counsel extensively explored the issue of whether Smith told the police different stories, including counsel's inquiry whether, in January of 2005, Smith realized the police "didn't believe what you were saying so you kept changing your story?" (Tr. Vol. VIII, at 1520.) Smith acknowledged he was facing a significant *Page 10 
amount of jail time, and defense counsel cross-examined Smith regarding his signing of a plea agreement and the consequences of his testimony. For instance, on this point, counsel asked Smith: "If they don't think you are telling the truth, they can withdraw it at any time, right?" Smith responded, "[t]hat's true." (Tr. Vol. VIII, at 1538.) Here, because the proffered questions involved matters that were essentially covered during defense counsel's extensive cross-examination, we find no abuse of discretion by the court in its determination to preclude further questioning on those issues.
 {¶ 23} Finally, an alleged violation of confrontation rights is subject to harmless-error analysis. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 31, citing Delaware v. Van Arsdall (1986),475 U.S. 673, 682, 106 S.Ct. 1431. In the present case, even assuming that some of the questions during the state's redirect examination elicited a new matter (such as Smith stating that a "runner" in prison told him the police were coming to speak with him), we are not convinced that appellant was prejudiced from such questions, or that the outcome of the trial would have been different had the court allowed recross-examination on these matters.
 {¶ 24} Based upon the foregoing, appellant's first assignment of error is without merit and is overruled.
 {¶ 25} Under the second assignment of error, appellant argues that the trial court erred in allowing amendment of the kidnapping count. Appellant contends the court's amendment improperly changed the identity of the offense.
 {¶ 26} Crim.R. 7(D) states in part as follows:
 The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, *Page 11 
provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment, information, or complaint, or to cure a variance between the indictment, information, or complaint and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. * * *
 {¶ 27} At issue is the trial court's amendment of the kidnapping charge. Pursuant to R.C. 2905.01, kidnapping is defined in part as follows:
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
 * * *
 (2) To facilitate the commission of any felony or flight thereafter;
 (3) To terrorize, or to inflict serious physical harm on the victim or another;
 * * *
 (B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 (1) Remove another from the place where the other person is found; *Page 12 
 (2) Restrain another of his liberty[.]
 {¶ 28} In the instant case, the indictment charging appellant with kidnapping alleged in relevant part the following:
 The Jurors of the Grand Jury of the State of Ohio * * * find and present that Antonio Smith * * * did, by force, threat, or deception, restrain another, to wit: Michael Bailes, of his liberty, with the purpose to facilitate the commission of a felony, to wit: Aggravated Robbery and/or Aggravated Murder, or flight thereafter, and/or to terrorize, or to inflict serious physical harm on the said Michael Bailes, or another, and/or in violation of section 2905.01 of the Ohio Revised Code, did, by force, threat or deception, knowingly and under circumstances that created a substantial risk of serious physical harm to Michael Bailes, caused physical harm to Michael Bailes, and/or restrain another, to wit: Michael Bailes, of his liberty * * *
 {¶ 29} At trial, the state requested the trial court to amend the indictment alleging that appellant, in facilitating the commission of a felony or in terrorizing or inflicting serious physical harm on the victim, did "restrain" the liberty of another. More specifically, the prosecutor sought an amendment to allege that appellant did "remove" another from the place where the person is found. The trial court, finding no prejudice to appellant in the proposed amendment, allowed the amendment. The jury was eventually instructed as to the elements of kidnapping under R.C. 2905.01(A)(2) and (3), as well as the elements of R.C. 2905.01(B)(1).
 {¶ 30} In support of the contention that the trial court erred in allowing the amendment, appellant cites State v. Dukes, Allen App. No. 1-02-64, 2003-Ohio-2386. Appellant's reliance upon Dukes, however, is inapposite, as under the facts of that case the defendant was initially indicted under R.C. 2905.01(A)(1), and the state moved to amend the kidnapping count to a violation of R.C. 2905.01(A)(4). The trial court allowed *Page 13 
the amendment, but on appeal the court found the amendment to be improper on the basis that subsections R.C. 2905.01(A)(1) and2905.01(A)(4) contain different elements, and, therefore, the amendment changed the identity of the crime. In contrast, in the present case appellant was charged under R.C. 2905.01(A)(2) and (A)(3), and the subsequent amendment did not result in a charge under another subsection involving different elements.
 {¶ 31} Appellant appears to contend that the "remove" and "restrain" language of the statute sets forth separate elements. However, the language at issue, providing in part that "[n]o person * * * shall remove another * * * or restrain the liberty of the other" is stated in the alternative, and we agree with the state's contention that the effect of the amendment was to change the method of kidnapping, but that such amendment did not change the nature or identity of the crime. SeeState v. Crotts, Cuyahoga App. No. 81477, 2003-Ohio-2473, at ¶ 16, reversed on other grounds, 104 Ohio St.3d 432, 2004-Ohio-6550 ("removal and restraint are separate means of completing a single element of a kidnapping"). Further, we find no abuse of discretion by the trial court in finding that the amendment did not result in prejudice. See State v.Kates, 169 Ohio App.3d 766, 2006-Ohio-6779, at ¶ 13 ("an amendment that does not change the name or identity of the crime charged is reviewed under an abuse of discretion standard"). As noted by the state, appellant's theory of the case did not involve whether or not the kidnapping occurred by restraint or movement; rather, appellant's defense was that his brother was responsible for the crime, and that he was falsely testifying against appellant. Under these circumstances, appellant was not misled or prejudiced by the trial court's amendment. *Page 14 
 {¶ 32} Based upon the foregoing, appellant's second assignment of error is without merit and is overruled.
 {¶ 33} Appellant's third, fourth, fifth, and sixth assignments of error are interrelated and will be considered together. Under these assignments of error, appellant challenges both the sufficiency and weight of the evidence presented to support his convictions for kidnapping and aggravated robbery, as well as the trial court's denial of his motion for judgment of acquittal under Crim.R. 29.
 {¶ 34} In State v. Darrington, Franklin App. No. 06AP-160,2006-Ohio-5042, at ¶ 15-16, this court discussed the applicable standards of review in considering a motion for judgment of acquittal (sufficiency challenge), and a challenge based upon weight of the evidence, stating as follows:
 A motion for judgment of acquittal, pursuant to Crim.R. 29, tests the sufficiency of the evidence. State v. Knipp, Vinton App. No. 06CA641, 2006-Ohio-4704, at P11. Accordingly, an appellate court reviews a trial court's denial of a motion for acquittal using the same standard for reviewing a sufficiency of the evidence claim. State v. Barron, Perry App. No. 05 CA 4, 2005-Ohio-6108, at P38.
 Sufficiency of the evidence and weight of the evidence are distinct legal concepts. State v. Sexton, Franklin App. No. 01AP-398, 2002-Ohio-3617. In Sexton, at P30-31, this court discussed those distinctions as follows:
 To reverse a conviction because of insufficient evidence, we must determine as a matter of law, after viewing the evidence in a light most favorable to the prosecution, that a rational trier of fact could not have found the essential elements of the crime proven beyond a reasonable doubt. * * * Sufficiency is a test of adequacy, a question of law. * * * We will not disturb a jury's verdict unless we find that reasonable minds could not reach the conclusion the jury reached as the trier of fact. * * * We will neither resolve evidentiary conflicts in the defendant's favor nor substitute our assessment of the credibility of the witnesses for the assessment made by the jury. * * * A *Page 15 
conviction based upon legally insufficient evidence amounts to a denial of due process, * * * and if we sustain appellant's insufficient evidence claim, the state will be barred from retrying appellant. * * *
 A manifest weight argument, by contrast, requires us to engage in a limited weighing of the evidence to determine whether there is enough competent, credible evidence so as to permit reasonable minds to find guilt beyond a reasonable doubt and, thereby, to support the judgment of conviction. * * * Issues of witness credibility and concerning the weight to attach to specific testimony remain primarily within the province of the trier of fact, whose opportunity to make those determinations is superior to that of a reviewing court. * * * Nonetheless, we must review the entire record. With caution and deference to the role of the trier of fact, this court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury, as the trier of facts, clearly lost its way, thereby creating such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against a conviction. * * *
 {¶ 35} As previously discussed under the second assignment of error, Ohio's kidnapping statute, R.C. 2905.01(A)(2), provides in part: "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found * * * [t]o facilitate the commission of any felony or flight thereafter." R.C. 2905.01(A)(3) states in part that "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found * * * to inflict serious physical harm on the victim[.]"
 {¶ 36} R.C. 2911.01(A), Ohio's aggravated robbery statute, states in relevant part:
 No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall * * *
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it; *Page 16 
 * * *
 (3) Inflict, or attempt to inflict, serious physical harm on another.
 {¶ 37} While a defendant may be charged in the indictment as a principal, "a jury may be instructed on complicity where the evidence at trial reasonably supports a finding that he was an aider or abettor."State v. Gonzalez, 151 Ohio App.3d 160, 2002-Ohio-4937, at ¶ 51. In the instant case, the trial court instructed the jury on the law relating to complicity and conspiracy. Under Ohio law, in order to support a conviction for complicity by aiding and abetting, "the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal."State v. Johnson (2001), 93 Ohio St.3d 240, 245-246. Further, "participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed." Id., at 245.
 {¶ 38} Under Ohio's conspiracy statute, R.C. 2923.01(A)(1), "a conspiracy exists where an individual, along with another person or persons, `plan[s] or aid[s] in planning' certain specified offenses, including kidnapping [and] aggravated robbery." State v.Fitzgerald, Summit App. No. 23072, 2007-Ohio-701, at ¶ 20. Further, "R.C. 2923.01(B) requires that an individual must commit a `substantial overt act in furtherance of the * * * conspiracy' in order to be convicted of conspiracy and defines an act as substantial and overt when it `manifests a purpose on the part of the actor that the conspiracy should be completed.'" Id.
 {¶ 39} In the present case, construing the evidence most strongly in favor of the state, there was sufficient evidence upon which the trier of fact could have found the *Page 17 
elements of complicity and/or conspiracy to commit aggravated robbery and kidnapping beyond a reasonable doubt. As to the charge of aggravated robbery, appellant's brother acknowledged the intent was to rob the driver, knowing that an individual such as Bailes, out looking for drugs, would be unlikely to report such a robbery. Smith testified that, after talking their way into the victim's truck and observing the driver display money from his wallet, appellant brandished a .32 caliber handgun and fired it, wounding Bailes in the back of the head. Following the shooting, Smith took the money from the victim, and he and appellant fled the scene. According to testimony by appellant's former girlfriend, Brandy Person, appellant admitted to having fired the fatal shot. Person's former roommate, Robin Sellers, similarly testified that appellant acknowledged firing the shot because "[t]hey were trying to rob him." (Tr. Vol. IX, at 1689.)
 {¶ 40} Regarding the kidnapping charge, there was testimony that the victim allowed appellant and his brother inside the truck cab based upon his belief they would direct him to a location where he could purchase drugs. Thus, there was evidence upon which the trier of fact could have concluded that appellant and his brother, through deception in causing the victim to believe he was driving to a location to obtain drugs, did remove the victim from where he was found in order to facilitate the commission of a felony, i.e., aggravated robbery.
 {¶ 41} Contrary to appellant's contention, the evidence does not suggest he was a mere bystander; rather, there was evidence upon which a reasonable trier of fact could conclude appellant was an active participant in the robbery. There was testimony that both men left their residence on the morning of the shooting armed with handguns, and appellant's brother initiated a conversation with him regarding stealing money from *Page 18 
someone who might "want some drugs, just run off with the money." (Tr. Vol. VIII, at 1465.) Smith further noted that, when they encountered Bailes, "since we was out trying to get some money * * * [w]e were going to run off with his money." (Tr. Vol. VIII, at 1469.) Thus, at the time Smith initiated the conversation about obtaining money, appellant had the opportunity to "renounce or abandon" such plan but he continued with his brother, and the fact that a witness may not have made a specific statement of his intent to join this plan is not dispositive.Johnson, supra, at 244. Here, construing the evidence most strongly in favor of the state, as we are required to do in evaluating a sufficiency claim, there was sufficient evidence upon which a trier of fact could have found the essential elements of the crimes for which appellant was convicted.
 {¶ 42} Further, in light of our determination as to the sufficiency of the evidence, appellant cannot demonstrate that the trial court abused its discretion in denying his motion for judgment of acquittal. The fact that the jury only found appellant guilty of a one-year firearm specification, rather than a three-year specification, does not render the verdicts internally inconsistent. See State v. Woodson (1985),24 Ohio App.3d 143 (defendant not entitled to judgment of acquittal of aggravated robbery where jury returned verdicts finding defendant guilty of aggravated robbery but not guilty of firearm specification);State v. Gardner, Montgomery App. No. 21027, 2006-Ohio-1130, at ¶ 34
("not guilty verdict on the firearm specification does not create an inconsistent verdict that invalidates the guilty finding on the aggravated robbery charge"); State v. Williams (Apr. 29, 1999), Franklin App. No. 98AP-975 (Ohio courts have adopted rationale by United States Supreme Court "that an inconsistent jury verdict does not mandate a reversal of a criminal defendant's conviction"). *Page 19 
 {¶ 43} Appellant also challenges his convictions as against the manifest weight of the evidence. Appellant's manifest weight argument is essentially a challenge to the credibility of appellant's brother, Smith. It is well-settled, however, that "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 44} In the instant case, the jury heard Smith testify as to his culpability in the offense as well as the plea bargain he struck, including his agreement to testify against appellant. The trier of fact, in returning its verdicts, obviously found at least portions of Smith's testimony credible, and we note that some of his testimony was corroborated by Person and Sellers, who spoke with appellant and his brother shortly after the incident. Based upon the record in this case, we will not second-guess the jury's credibility determination as to the witnesses. Upon review, we find that the jury did not lose its way and create such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, and we therefore find no merit to appellant's contention that the convictions are against the manifest weight of the evidence.
 {¶ 45} Based upon the foregoing, appellant's third, fourth, fifth, and sixth assignments of error are without merit and are overruled.
 {¶ 46} Under his seventh assignment of error, appellant asserts that the trial court erred in imposing consecutive sentences and in imposing sentences in excess of the statutory minimum for an offender who has not previously served prison time. Appellant argues that the indictment in his case predated the Ohio Supreme Court's decision in State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, and that retroactive application of the *Page 20 
now excised version of Ohio's criminal sentencing statutes would violate the prohibition against ex post facto laws.
 {¶ 47} The argument raised by appellant has been addressed and rejected by this court in numerous decisions. See State v. Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899, at ¶ 18 (noting that"Foster did not judicially increase the range of appellant's sentence, nor did it retroactively apply a new statutory maximum to an earlier committed crime"); State v. Alexander, Franklin App. No. 06AP-501,2006-Ohio-6375, at ¶ 7-8 ("We are bound to apply Foster as it was written. * * * [A]t the time that appellant committed his crimes the law did not afford him an irrebuttable presumption of minimum and concurrent sentences. As such, Foster does not violate appellant's right to due process and does not operate as an ex post facto law"). In light of the above precedent, appellant's seventh assignment of error is without merit and is overruled.
 {¶ 48} Based upon the foregoing, appellant's seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.
Judgment affirmed.
 BRYANT and BOWMAN, JJ., concur. BOWMAN, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1