[Cite as *State v. Ayers*, 2013-Ohio-5601.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 13AP-18 |
| | | (C.P.C. No. 12CR-03-1180) |
| Tyrece L. Ayers, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 19, 2013

*Ron O'Brien*, Prosecuting Attorney, and *Laura R. Swisher*, for appellee.

*Richard Cline & Co., LLC,* and *Richard A. Cline*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

GREY, J.

{¶ 1} Defendant-appellant, Tyrece L. Ayers, appeals from a judgment of conviction and sentence entered by the Franklin County Court of Common Pleas pursuant to a jury verdict finding him guilty of one count of murder with a specification that the crime was committed with a firearm discharged from a motor vehicle. Appellant also appeals from his additional conviction of one count of having a weapon under disability, this last charge being tried to the bench.

{¶ 2} The charges against appellant arise out of the fatal drive-by shooting of Tyrone Malcolm, Jr., on January 23, 2010 in Columbus, Ohio. Appellant was not accused of being the triggerman, but of guilt by complicity for providing the shooter with appellant's own gun and otherwise aiding and abetting the shooter. The Franklin County Grand Jury indicted appellant on one count of aggravated murder with drive-by and firearm specifications, one count of murder with the same specifications, one count of having a weapon under disability, and one count of tampering with evidence. The jury

returned verdicts of guilty of murder with the drive-by specification only, not guilty of aggravated murder, and not guilty of tampering with evidence. After the jury returned its verdict, the court sentenced appellant to 15 years to life on the murder conviction, a consecutive term of 5 years for the drive-by specification to the murder count, and a consecutive 12-month sentence for having a weapon under disability, for a total sentence of 21 years to life.

{¶ 3}    Appellant has timely appealed and brings the following three assignments of error:

> [I.] Insufficient evidence supported the murder verdict and the drive-by specification.
>
> [II.] The trial court erred when it accepted the jury's inconsistent verdict of guilty to felonious assault and not guilty to the firearm specification, in conflict with *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990).
>
> [III.] The trial court erred when it concluded that adjudication of delinquency for a non-existent robbery offense, under a plea bargain, gives rise to a disability under the Weapons Under Disability Statute.

{¶ 4}    Appellant's first assignment of error asserts that the jury's verdict on the murder count and attendant drive-by specification is not supported by sufficient evidence to sustain a conviction. The legal concepts of sufficiency of the evidence and weight of the evidence involve different determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). As to sufficiency of the evidence, " 'sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *Id.*, citing Black's Law Dictionary 1433 (6 Ed.1990). A determination as to whether the evidence is legally sufficient to sustain a verdict is a question of law. *Thompkins* at 386. When we review the sufficiency of the evidence upon appeal, we construe the evidence in the light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. As a result, when we

review the sufficiency of the evidence, we do not on appeal reweigh the credibility of the witnesses. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79.

{¶ 5} The relevant inquiry on review of the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis sic.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). A reversal based on insufficient evidence has the same effect as a not-guilty verdict because such a determination "means that no rational factfinder could have voted to convict the defendant." *Tibbs v. Florida*, 457 U.S. 31, 41 (1982).

{¶ 6} Quintin Woods was the driver of the car on the night of the shooting and testified against appellant pursuant to a plea agreement covering his part in the crime. Woods testified that on the evening of January 23, 2010, Woods, appellant, and three other men, Alex Ferguson, Jerode Perry, and Aaron Fields, set out in Woods' car to go to a night club. Woods testified that he knew appellant from growing up together in the Woodcrest neighborhood on the east side of Columbus.

{¶ 7} The car began to overheat, and after adding water to the radiator the group decided to change their plans accordingly and merely drive around Woodcrest. The group was driving down Livingston Avenue when appellant and Ferguson spotted the victim, Tyrone Malcolm, Jr., walking on the service road that parallels Livingston Avenue. Appellant and Ferguson told Woods to turn around, and Woods complied by making a U-turn in a church parking lot in order to head back toward Malcolm. As he made a U-turn, Ferguson asked appellant for a gun. Appellant was sitting directly behind Ferguson, who was in the front passenger seat. Woods did not directly observe appellant transfer a gun to Ferguson, but testified that he had seen appellant with a gun earlier when the men got in the car. From this, Woods deduced that appellant must have given a gun to Ferguson when Ferguson asked for it. When they pulled even with Malcolm, Ferguson fired a single shot out the passenger side window. As the car left the scene, Woods heard appellant say "I think you hit him. I seen him fall." Ferguson said, "I think I got him." (Tr. Vol. III, 316.)

{¶ 8} Woods further testified that after the shooting, he sped off and drove to Ferguson's house, where the group watched a TV news report about the shooting. The

news report indicated that Tyrone Malcolm had been fatally shot.  While at Ferguson's apartment, Ferguson gave the gun to appellant and told appellant to get rid of it.  Appellant replied that he intended to sell or trade the gun.

{¶ 9}  Woods testified that he had known Ferguson for several years and that Ferguson, appellant, and the other two passengers in the car were members of a gang called the Woodcrest Bloods.  Woods also testified that the victim was a member of a rival gang, the Elaine Crips, and that at the time of the shooting, there was a "beef" between the gangs.  (Tr. Vol. III, 324-25.)  Woods testified that the three men sitting in the back seat, appellant, Perry, and Fields, were all armed that night.  Perry and Fields carried a .25 caliber semi-automatic pistol and a .22 caliber revolver, respectively.  On cross-examination, Woods admitted that when first interviewed by police, he told them that Ferguson had pulled the murder weapon from his own black hoodie.  At trial, Woods testified that he had so stated in order to avoid implicating any friends beyond Ferguson in the shooting.

{¶ 10} Appellant's cousin, Darell Ayers ("Darell"), testified for the prosecution in exchange for a favorable negotiated plea in unrelated robbery charges.  Darell did not testify from personal knowledge of the circumstances of the crime, but described his subsequent conversations on the subject with appellant.  Darell testified that appellant had told him that Ferguson asked appellant for a gun while in the car, appellant gave his gun to Ferguson, and Ferguson fired one shot at the victim before the car drove off.  Darell testified that, prior to the shooting, appellant carried a Glock .357 semi-automatic pistol and that after the shooting, appellant traded this gun for a .40 Glock.

{¶ 11} An eyewitness to the shooting, Carla Sanders, testified that she lived in the neighborhood and, on the night in question, was walking on Livingston Avenue.  She saw Malcolm, whom she knew by sight, and another man walking together on the parallel service road.  A light-colored car drove by, she heard at least one gun shot, and saw Malcolm fall.  At the sound of the gunshot, she saw both men fall to the ground, but only one got up.  The one who did not get up was Malcolm.  She crossed the street and observed Malcolm lying in front of 4090 Livingston Avenue, not moving.  She stayed until police arrived, whereupon she gave a statement to an officer.

{¶ 12} Obinna Ugwu, M.D., testified as a forensic pathologist. He prepared the coroner's report for the victim. The immediate cause of death was a gunshot wound to the upper right side of the chest, which penetrated the right lung and then passed through the spine to continue to the left lung, coming to rest just beneath the skin of the left armpit. Dr. Ugwu was able to retrieve the projectile from the body. He was unable to determine the distance from which the shot was fired, beyond noting that there was no indication that it was a contact gunshot wound. The prosecution presented the projectile removed from the victim's body and Dr. Ugwu identified it. He confirmed that the projectile was badly distorted because it had passed through ribs and vertebrae, causing more deformation than if it had only struck soft tissue.

{¶ 13} Detective Cavan Jackson, of the Columbus Division of Police, testified and described his observations as the crime scene detective in the case. He described various sketches and photographs taken of the victim and crime scene. He also identified and described some items recovered and taken as evidence. Detective Jackson stated that ultimately the only significant item recovered at the scene was a spent .357 SIG shell casing ejected from a semi-automatic weapon.

{¶ 14} Detective Robert Powers, of the Columbus Division of Police, was the lead detective in the investigation and testified at trial. He testified that the recovered .357 SIG casing did not undergo any ballistic testing because the investigation never recovered a weapon that could be matched to the spent shell.

{¶ 15} Detective Powers stated that he interviewed appellant some eight months after the shooting. Detective Powers authenticated an audio recording of this interview, and the recording was then played in open court. In this, appellant initially denied knowing anything about the shooting or having anything to do with it. Detective Powers told appellant, without revealing the specific source of information, that police had spoken to others in the car who had then implicated appellant. Appellant eventually admitted that he had been in the car that night and that Woods was the driver. Appellant stated that he was the middle passenger in the back seat and Ferguson was in the front passenger seat. Appellant further stated that he speculated that Ferguson and Malcolm must have had a "beef" about something but that the gunshot was a surprise to appellant and he was "shellshocked" when it happened. (Tr. Vol. IV, 431-32.) Appellant told

Detective Powers that, as far as appellant knew, Ferguson was the only person with a gun in the car and was the one who told Woods to make the U-turn to come back towards Malcolm.

{¶ 16} After the conclusion of Detective Powers' direct testimony and the audio recording of his interview with appellant, appellant testified on his own behalf. He stated that Ferguson had his own gun on the night of the shooting and that Ferguson alone had a "beef" with Malcolm. Appellant only learned of the dispute between Ferguson and Malcolm after the shooting. In appellant's recollection, Ferguson pulled his gun from his hoodie and, without a word to any of the other occupants of the car, shot Malcolm from the passenger side window. Ferguson then threatened the other occupants of the car by saying, "if anyone has something to say." (Tr. Vol. IV, 491.) Appellant took this as a veiled threat on the lives of the other car occupants if they spoke about the shooting. Appellant testified that he was afraid of Ferguson, not only on his own behalf but for his parents, fully believing that Ferguson was capable of killing to cover his crime. Appellant further testified that he never spoke with Darell about the shooting, never owned a .357 semi-automatic handgun, and that Darell had lied only because he got a deal with the state in his own case. Appellant testified that when riding in the car, he was sitting in the middle rather than immediately behind the passenger seat on the right hand side of the car as described by Woods, implying that he could not have passed a weapon to Ferguson between the front seats without being seen by Woods.

{¶ 17} The evidence summarized above is sufficient to support appellant's conviction. Appellant was prosecuted for the offense of murder with a firearm specification under a complicity theory. R.C. 2903.02(B) defines the elements of the crime of felony murder and states in relevant part that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." The court instructed the jurors that they could find appellant guilty of murder if they found that appellant was complicit in the crime by aiding and abetting the principal, Ferguson, in committing the offense of felonious assault upon Malcolm, and that Malcolm's death was the proximate result of this violent felony. R.C. 2903.11(A) defines the offense of felonious assault as knowingly causing serious physical harm to another, or causing or attempting to cause

serious physical harm to another by means of a deadly weapon. R.C. 2903.11(D) provides that the offense is a felony of the second degree, or first degree if the victim is a peace officer.

{¶ 18} Ohio's complicity statute, R.C. 2923.03, provides that "no person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense." R.C. 2923.03(A)(2). A person who violates R.C. 2923.03(A)(2) is guilty of complicity and "shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense." R.C. 2923.03(F).

{¶ 19} To sustain a conviction on the basis of complicity, the evidence must show that the defendant "supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240 (2001), syllabus. The finder of fact may infer these elements, including intent, from the circumstances surrounding the crime. *Id.* at 245. " 'Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " *Id.*, quoting *State v. Pruett*, 28 Ohio App.2d 29, 34 (4th Dist.1971). Common purpose among two people to commit a crime may be inferred from circumstances surrounding the act and from the defendant's subsequent conduct. *State v. Gonzalez*, 10th Dist. No. 10AP-628, 2011-Ohio-1193, ¶ 25, citing *Pruett*. Mere presence of an accused at the crime scene is not, of itself, sufficient to prove that the defendant was an aider and abettor under R.C. 2923.03(A)(2). *Johnson* at 243. "This rule is to protect innocent bystanders who have no connection to the crime other than simply being present at the time of its commission." *Id.*

{¶ 20} In the present case, the evidence outlined above, if believed, established far more than appellant's "mere presence" in the car at the time Ferguson shot Malcolm. Woods testified that appellant and Ferguson both stated "that's TY [Malcolm]" as the car drove past the victim. (Tr. Vol. III, 308.) After they passed the victim, both appellant and Ferguson told Woods, as driver, to turn around to retrace his path and pass Malcolm again. Woods heard Ferguson ask appellant for a gun, and although Woods did not personally observe appellant transfer a gun to Ferguson, he testified that he had seen

appellant with a gun earlier when the men got into the car. After the shooting, Woods heard appellant state that Ferguson had hit the victim and appellant had seen the victim fall. The men then went to Ferguson's house to watch the news and confirm the shooting. At this time, Woods observed Ferguson return a gun to appellant and discussed disposing of it.

{¶ 21} Ayers' testimony regarding appellant's own statements after the murder agrees with much of Woods' account. To this, Darell's testimony added appellant's later account that he had previously carried a Glock .357 and that after the shooting he traded it for another gun. This caliber corresponded with the empty shell casing recovered by police at the scene.

{¶ 22} In considering appellant's challenge to the sufficiency of the evidence, we do not address the credibility of the witnesses. The witness descriptions of appellant's conduct before, during and after the shooting supports an inference of intent that complements his actual physical facilitation of the shooting by furnishing a gun to the actual triggerman. The jury could reasonably conclude that appellant exhibited knowing conduct in identifying the victim, asking the driver to turn around and go back toward the victim, and furnishing a firearm to Ferguson for purposes of aiding him to cause serious physical harm to the victim. In addition, the witnesses described the existence of a "beef" between some of the occupants in the car and Malcolm. Specific knowledge of past altercations or hostility between the principal and the victim can be probative of the abettor's mental state and culpability in the offense. *State v. Tuggle*, 6th Dist. No. L-09-1317, 2010-Ohio-4162. Appellant's first assignment of error is accordingly overruled.

{¶ 23} Appellant's second assignment of error asserts that the verdicts are inconsistent because the jury returned a not-guilty verdict on the firearm specification that accompanied the murder charge. Appellant relies on *State v. Koss*, 49 Ohio St.3d 213 (1990). In *Koss*, the defendant was indicted for the murder of her husband with a firearm specification. In defense, she asserted both battered-woman syndrome and accident. The jury returned the verdict of not guilty of murder, guilty of voluntary manslaughter, but not guilty of the gun specification. The Supreme Court in *Koss* ultimately held that, since the victim undisputedly died of a gunshot wound, a finding of guilty of voluntary

manslaughter without the gun specification was inherently inconsistent and could not support the conviction on the principal offense.

{¶ 24} This court, as have other appellate courts in Ohio, has over time limited the precedential impact of the decision in *Koss* in cases not involving voluntary manslaughter. Most recently, in *State v. Darson*, 10th Dist. No. 09AP-1086, 2010-Ohio-5713, we noted that "determinations made on the respective specifications do not alter findings of guilt on the underlying convictions." *Id.* at ¶ 43, citing *State v. Trewartha*, 165 Ohio App.3d 91, 2005-Ohio-5697, ¶ 38; *State v. Perryman*, 49 Ohio St.2d 14, 26 (1976), *vacated in part on other grounds*, *Perryman v. Ohio*, 438 U.S. 911 (1978); *State v. Crabtree*, 10th Dist. No. 09AP-1097, 2010-Ohio-3843, ¶ 19. In *Crabtree*, this court held that "[a]s long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id.* at ¶ 19. "A jury need not deliver rationally consistent verdicts in order for the verdicts to be upheld. * * * As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id.*, citing *Trewartha* at ¶ 15. *See also, State v. Smith*, 10th Dist. No. 06AP-1165, 2007-Ohio-6772, ¶ 42.

{¶ 25} We accordingly overrule appellant's second assignment of error and find that the jury's failure to return a guilty verdict on the firearm specification does not preclude a guilty verdict on the murder charge.

{¶ 26} Appellant's third and final assignment of error asserts that the trial court erred when it found appellant guilty of having a weapon while under disability. The disability supporting this charge is based upon a prior juvenile adjudication for a delinquency count of robbery under R.C. 2911.02. This delinquency adjudication resulted from a plea bargain in which appellant admitted to the offense and the state correspondingly agreed to a lenient classification of the crime as an F-5 felony. Appellant argues that R.C. 2911.02(A)(2) defines robbery as an F-2 or F-3 felony, and that appellant therefore pleaded to the nonexistent crime of F-5 robbery. Appellant argues that a fictional crime cannot constitute the predicate offense establishing the disability underlying the charge of having a weapon under disability.

{¶ 27} R.C. 2923.13 provides that no person shall "knowingly acquire, have, carry, or use any firearm" if the person has been convicted of any felony offense of violence or

has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence. R.C. 2901.01(A)(9) defines the predicate offenses of violence and includes robbery as defined by R.C. 2911.02. The sole question before us is whether a sentencing notation, specifying that a conviction is graded as an F-5 felony under a statute defining F-2 and F-3 felonies, will vitiate that conviction as a predicate offense for carrying a weapon under disability. We find that in this case it does not.

{¶ 28} Robbery is an offense of violence, and a lenient plea bargain that fictionally describes the conviction as an F-5 felony rather than F-2 or F-3, does nothing to alter the essence of the crime for purposes of creating a disability. The technical argument proposed by appellant is not persuasive, and does nothing to dissuade us from enforcing the plain intent of the legislature in restricting the possession and use of weapons by certain classes of convicted criminal offenders. Appellant's third assignment of error is accordingly overruled.

{¶ 29} In accordance with the foregoing, appellant's three assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

GREY, J., retired, formerly of the Fourth Appellate District, assigned to active duty under the authority of Ohio Constitution, Article IV, Section 6(C).

———————————