[Cite as *State v. Maldonado*, 2020-Ohio-5616.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | No. 108907 |
| v. | : | |
| ELVIN MALDONADO, | : | |
| Defendant-Appellant. | : | |

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:** December 10, 2020

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-634404-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Glen Ramdhan, Assistant Prosecuting Attorney, *for appellee.*

The Law Office of Jaye M. Schlachet, Jaye Schlachet, and Eric M. Levy, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1}  Defendant-appellant Elvin Maldonado appeals from his convictions for felonious assault and discharge of a firearm on or near prohibited premises.  He assigns the following errors for our review:

I.  The trial court erred when it entered a conviction and imposed a void sentence for a five-year drive-by shooting firearm specification for Count 8, discharge of a firearm on or near prohibited premises, a charge where the specification is not applicable.

II.  [Maldonado's] convictions were entered without sufficient evidence.

III.  [Maldonado's] convictions were against the manifest weight of the evidence.

IV.  The trial court erred when it failed to instruct the jury on aggravated assault, an inferior offense to felonious assault, which was overwhelmingly supported by the testimony at trial.

V.  [Maldonado's] convictions are inconsistent within the same count and violate the United States and Ohio Constitutions and otherwise his right to due process of law where the jury's findings of not guilty on the firearm specifications within the same counts as his underlying convictions and guilty findings on the drive-by shooting specifications make such convictions impossible.

VI.  [Maldonado's] convictions must be vacated as a result of ineffective assistance of trial counsel.

VII.  The trial court erred when it sentenced [Maldonado] to register as a violent offender under R.C. 2903.41, Sierah's Law which is contrary to law as not being applicable to any of [his] convictions.

{¶ 2}  Having reviewed the record and the caselaw, including the state's acknowledgment that Maldonado's first assigned error is well-taken, we affirm the conviction for discharge of a firearm on or near prohibited premises but remand that

conviction for resentencing, and we reverse the convictions for felonious assault and remand them for a new trial. For convenience, we shall address the assigned errors out of their predesignated order.

{¶ 3} Following a November 5, 2018 shooting, Maldonado was charged with attempted murder and two counts of felonious assault upon Carmen Rojas ("Rojas"), a total of four counts of felonious assault upon Kenny Rivera ("Rivera"), and minors A.S., J.S., and A.F., and discharge of a weapon on or near prohibited premises, all with one-year, three-year, and five-year "drive-by" firearm specifications. The case proceeded to a jury trial on May 22, 2019.

{¶ 4} Through an interpreter, Rojas testified that she lives in a duplex on Cloud Avenue in Cleveland. Maldonado is her former neighbor, but he moved prior to the shooting that is the subject of the trial. While they were neighbors, their families had been friendly. However, after Maldonado's dog bit Rojas's daughter's boyfriend, Maldonado's family was evicted from the duplex, and the families were no longer on good terms. On November 5, 2018, Rojas's son, Rivera, his girlfriend, A.S., Rojas's daughter, J.S., and her granddaughter, A.F., were with Rojas at her home. According to Rojas, at approximately 3:45 p.m., a woman associated with Maldonado drove a young man to her home and gave him eggs. The young man threw the eggs at Rojas's car and her house, then the woman threatened Rojas before leaving.

{¶ 5} Rojas subsequently asked Rivera, A.S., and J.S. to go to the store for her. The group walked to the nearby Q's Gas Station. When they arrived at the gas

station, they spotted Maldonado in a white truck, and his son and another boy near the gas pumps. Rivera confronted Maldonado's son and the other boy about egging Rojas's home. As Maldonado emerged from the truck, he ordered his son and the other boy to get into the truck. At that point, Rivera and Maldonado began to fight. After the fight was broken up by others at the gas station, Maldonado returned to his truck, threatened retaliation, and briefly followed Rivera, A.S., and J.S. as they returned to Rojas's home. According to A.S., Rivera, who was on parole, was unarmed. A.S. also testified that she did not see Maldonado with a weapon.

{¶ 6} Rivera and the others returned to Rojas's home and stood outside with Rojas and A.F. Approximately fifteen to twenty minutes later, a white F-150 truck arrived, and the driver began shooting, striking Rojas in the neck. Other shots were fired toward the backyard. Rojas told police officers who responded to the scene that Maldonado was the assailant. She testified that she saw Maldonado in the truck immediately before the shooting. A.S. and J.S. testified that Maldonado was the shooter. Rojas testified that the shooting occurred while the truck was in her driveway. She also testified that she was hospitalized after the shooting and has lingering dexterity problems from her injuries. A.S. testified that the white truck was partially in the driveway and partially on the street when the shooting occurred.

{¶ 7} Cleveland Officer Jonathan Holub ("Officer Holub") testified that he went to Maldonado's home to question him about the shooting. Maldonado was not there, but a white truck registered to Maldonado's father was in the yard. According to Officer Holub, the truck's hood was warm, indicating that it had recently been

driven. Maldonado's father told Officer Holub that Maldonado had used the truck before driving to work in another vehicle. He also consented to a search of the truck. No fingerprints, gun, or shell casings were recovered from the white truck. However, a .22 caliber rimfire cartridge was recovered from the street in front of Rojas's house. It was not established that the cartridge had "cycled through a firearm" or had simply been dropped.

{¶ 8} Cleveland Police Detective Cynthia Moore ("Det. Moore") testified that she spoke with Maldonado at his job at a nearby deli. According to Det. Moore, Maldonado stated that he fought Rivera after Rivera confronted his son and the other boy about the egging incident. Maldonado stated that he was bloodied during this fight and that Rivera had a weapon. Maldonado was arrested at the deli.

{¶ 9} Proceeding with the defense, Maldonado's mother testified that just before 4:00 p.m., Maldonado drove in the white truck registered to Maldonado's father and began looking for his son and the other child who had not yet returned from school. Maldonado returned home approximately fifteen to twenty minutes later. At that point, he was bloodied and suffering from an asthma attack. He asked her to drive him to work, then changed his mind, and decided to drive her car after parking his truck in the backyard.

{¶ 10} Maldonado's son testified that he and the other boy walked home from school and stopped at the gas station. At the gas station, Rivera confronted him about the egging incident. When Maldonado exited his truck, Rivera punched him in the eye and put him in a choke hold. During the fight, a gun fell from Rivera's

waistband, and one of the minors with him picked it up and then walked toward Cloud Avenue. Maldonado's son testified that Maldonado lost the fight with Rivera. After the fight, Maldonado was "the maddest [he] had ever seen him" and breathing like he was having an asthma attack. Maldonado's son decided to give Maldonado space after the fight. He watched as Maldonado drove off past Cloud Avenue and past a nearby cemetery. When the son arrived home, Maldonado's truck was already parked in the backyard.

{¶ 11} San Pedro Garcia ("Garcia"), a friend of Maldonado, testified that on the afternoon of the shooting, he was at laundromat near the gas station and spoke briefly with Maldonado. A few minutes later, he saw Maldonado and Rivera arguing. Garcia testified that Rivera threw the first punch and generally got the better of Maldonado during the fight. Garcia also testified that he saw a gun fall from Rivera's waist during the fight. At that point, Maldonado instructed his son and the other child to flee, and a black-haired girl with Rivera picked up the weapon.

{¶ 12} Maldonado testified that he received a Facebook call warning him that Rivera was about to start trouble with his son at the gas station. Maldonado got into the truck and headed toward the gas station. When he arrived, he told Rivera to deal with him and not the children. According to Maldonado, Rivera was the aggressor of the ensuing fight, and punched him in the eye as he exited the truck. As they fought, Rivera's gun fell to the ground, and Maldonado told his son and the other boy to run. Afterward, when Maldonado was driving away, Rivera warned Maldonado that he was going to shoot them, and Maldonado began suffering an

asthma attack.  According to Maldonado, he experiences asthma attacks when he is extremely stressed.  Maldonado denied involvement in the shooting.

{¶ 13}  Maldonado further testified that he did not drive the white truck to his job at the deli because the plates were expired, and it had a burned out blinker light.  He parked the truck in the backyard when he arrived home so that it would not be damaged by neighborhood vandals.  Maldonado stated that when police later confronted him at his job at the deli, he was frightened and mistakenly stated that he had previously been driving a different vehicle, and not the white truck.

{¶ 14}  Maldonado was acquitted of attempted murder and all of the one-year and three-year firearm specifications, but he was convicted of all remaining charges.  The trial court merged the felonious assault charges involving Rojas with the count of discharging a weapon on or near prohibited premises.  The court sentenced Maldonado to serve a five-year term for the drive-by firearm specification and a four- year term on the merged offenses, and to concurrent nine-year terms on the remaining offenses.

## Applicability of R.C. 2941.146 Specification to Discharge of Firearm on or Near Prohibited Premises

{¶ 15}  In the first assigned error, Maldonado asserts that the R.C. 2941.146 five-year "drive-by" firearm specification is not applicable to a charge of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162.  He argues that R.C. 2941.146 applies only to felonies that include, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm

to another, but R.C. 2923.162 is a strict liability offense that contains the element of "serious physical harm," but not "physical harm."

{¶ 16} The state of Ohio concedes this error. Likewise, we note that R.C. 2941.146 provides for a mandatory five-year prison term for offenders who commit "a felony that includes, as an essential element, purposely or knowingly causing or attempting to cause the death of or physical harm to another[.]" *See State v. Peoples*, 10th Dist. Franklin No. 18AP-850, 2019-Ohio-2141, ¶ 11. R.C. 2923.162 does not contain the mens rea of "purposely," and is instead a strict liability offense. *See State v. James*, 2015-Ohio-4987, 53 N.E.3d 770, ¶ 33 (8th Dist.). Therefore, the five-year drive-by specification is not applicable to this offense. Accordingly, we conclude that this assigned error is well taken. Inasmuch as this well-taken argument is dispositive of the assigned error, we do not reach Maldonado's second argument that the five-year specification is inapplicable to a charge of discharge of a firearm on or near prohibited premises because R.C. 2923.162 contains the element of "serious physical harm" rather than "physical harm."

## No Aggravated Assault Instruction

{¶ 17} In the fourth assigned error, Maldonado argues that the trial court erred in failing to instruct the jury on the offense of aggravated assault, as a lesser included offense of felonious assault. He maintains that there was evidence that he had both serious provocation and actual sudden passion and a fit of rage, and that the events occurred within minutes of each other and in an extremely close geographical proximity.

{¶ 18} As defined in R.C. 2903.12, aggravated assault is an inferior degree of felonious assault "since its elements are identical to those of felonious assault, except for the additional mitigating element of serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 210-211, 533 N.E.2d 294 (1988). The difference between the elements of aggravated and felonious assault is provocation involving sudden passion or fit of rage. *State v. McDuffie*, 8th Dist. Cuyahoga No. 100826, 2014-Ohio-4924, ¶ 22.

{¶ 19} In a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury. *Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph four of the syllabus. A defendant must show that he or she acted under serious provocation. *Id.* at ¶ 23-24. "'Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force.'" *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, 858 N.E.2d 1222, ¶ 43 (1st Dist.), quoting *State v. Horton*, 9th Dist. Summit No. 26407, 2013-Ohio-3902, ¶ 52. R.C. 2903.12 also states that a defendant must act "while under the influence of sudden passion or in a sudden fit of rage."

{¶ 20} In *State v. Mack*, 82 Ohio St.3d 198, 1998-Ohio-375, 694 N.E.2d 1328, the Ohio Supreme Court reiterated that an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage, meaning that the provocation must be "sufficient to

arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 201. "[P]ast incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." *Id.* at 201. If this objective standard is met, then the inquiry shifts to a subjective standard to determine whether the defendant in the particular case "'actually was under the influence of sudden passion or in a sudden fit of rage.'" *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992). Finally, we note that the "determination of adequate provocation is a fact specific analysis." *State v. Torres*, 3d Dist. Defiance No. 4-01-06, 2002-Ohio-1203, *11.

{¶ 21} In undertaking the required fact-specific analysis in this matter, and turning to the objective standard, we note that the record clearly demonstrates that the Rojas group had been friends with Maldonado and his family but there was a falling out after the dog-bite incident. After that, Maldonado's family was evicted from their home. Tensions accumulated, and after the egging incident, the Rojas group blamed Maldonado's family. Rivera confronted Maldonado's son and the other boy in the presence of Maldonado. Maldonado emerged from the truck when he saw Rivera accosting the boys and instructed them to get into his truck. At that point, Rivera and Maldonado began fighting. Rivera struck Maldonado in the eye and put him in a choke hold. During the fight, a gun fell from Rivera's waist and was picked up by someone with him. On these facts, this courts find the objective standard to be met herein.

{¶ 22} Turning to the subjective standard, the state insists that there is insufficient evidence of provocation because Maldonado testified, "I was mad. I wasn't like fiery mad. I was just -- I was more concerned and upset." However, Maldonado admitted that he was suffering from an asthma attack. His son also testified that that Maldonado was having an asthma attack. The son explained that this was the angriest he had ever seen his father. He could see that his father was in a fit of rage from the manner in which he grabbed the steering wheel of the truck after being beat up by Rivera. Maldonado's mother likewise testified that her son was bloodied after the fight. As he prepared to go to work, she was concerned about his breathing and wanted him to take his asthma medication. This is sufficient evidence to show that that the subjective standard was met in this matter.

{¶ 23} As to whether a "cooling off" occurred herein, we recognize that a cooling off period can be extremely short. *See State v. Burkes*, 8th Dist. Cuyahoga No. 106412, 2018-Ohio-4854, ¶ 31 (sufficient cooling off period where the claimed provocation was an alleged assault from the previous the night). *See also State v. Harber*, 8th Dist. Cuyahoga No. 51758, 1987 Ohio App. LEXIS 7137 (Feb. 19, 1987) (ten-minute interval defeated claim of provocation where "there was no evidence that appellant had anything to fear once he exited the house"). However, after a twenty-minute interval, sufficient provocation was still present where the victim propositioned the defendant's young son. *See State v. Patterson*, 10th Dist. Franklin No. 14AP-290, 2014-Ohio-2740, ¶ 13. Here, the evidence demonstrated that Maldonado was extremely upset after Rivera confronted his son and the other boy,

then punched him and put him in a choke hold. On the record presented, including Maldonado's bloodied state and breathing difficulties, his concern for his son given the Facebook threats, and his discovery that Rivera carried a weapon, we cannot say that the interval here, approximately 15 minutes, defeats the serious provocation.

{¶ 24} In accordance with the foregoing, we conclude that the defense presented sufficient evidence of serious provocation that was sufficient to arouse the passions of an ordinary person beyond the power of his or her control and reasonably sufficient to incite or arouse Maldonado into using deadly force. We also conclude that Maldonado acted while under the influence of sudden passion or in a sudden fit of rage. Therefore, we hold that the trial court erred in failing to give the jury an instruction on aggravated assault.

{¶ 25} This court recognizes that numerous cases from this court that have upheld the denial of an aggravated assault instruction in a trial on felonious assault. *See*, *e.g.*, *Mack*, 82 Ohio St.3d 198, 1998-Ohio-375, 694 N.E.2d 1328; *Shane*, 63 Ohio St.3d at 634-635, 590 N.E.2d at 276; *State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579; *State v. Crim*, 8th Dist. Cuyahoga No. 82347, 2004-Ohio-2553. However, in that the analysis that must be undertaken by the reviewing court is driven by the particular facts presented in each individual case, these cases do not compel a particular outcome. Rather, they set forth an analytical framework that was duly recognized and applied by this court herein.

{¶ 26} Finally, insofar as the state argues that the instruction on the lesser offense of aggravated assault is not proper because Maldonado denied committing

the offense, we note that in *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, the Ohio Supreme Court held as follows:

> [T]his court explained in [*State v.*] *Wilkins*, [, 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980)] even when a complete defense is offered by the defendant, if the state's evidence could be interpreted as supporting only a lesser included offense, a lesser-included-offense charge to the jury is appropriate:
>
> "To clarify, we are restating the rule as follows:
>
> "If the evidence adduced on behalf of the defense is such that if accepted by the trier of fact it would constitute a complete defense to all substantive elements of the crime charged, the trier of fact will not be permitted to consider a lesser included offense unless the trier of fact could reasonably find against the state and for the accused upon one or more of the elements of the crime charged, and for the state and against the accused on the remaining elements, which, by themselves, would sustain a conviction upon a lesser included offense." *Id.* at 388.
>
> This court has therefore left no doubt that it is the quality of the evidence offered, not the strategy of the defendant, that determines whether a lesser-included-offense charge should be given to a jury. * * *
>
> * * * A defendant's choice to pursue an all-or-nothing defense does not require a trial judge to impose upon the state an all-or-nothing prosecution of the crime  charged if the evidence would support a conviction on a lesser included offense:  "If under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense, the instruction on the lesser included offense must be given."

*Wine* at ¶ 25- 32, quoting *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980). *Accord State v. Bouie*, 8th Dist. Cuyahoga No. 108095, 2019-Ohio-4579, ¶ 46. *See also State v. McDuffie*, 8th Dist. Cuyahoga No. 100826, 2014-Ohio-4924, ¶ 22.

{¶ 27} Here, we note that Maldonado's defense included evidence going to the issue of provocation. He presented a sort of hybrid defense that, despite his denial that he committed the offense, also included evidence going to provocation. That is, Maldonado's son testified that when Maldonado exited his truck at the gas station, Rivera punched him in the eye and placed him in a choke hold. Maldonado lost the fight with Rivera, and a gun fell from Rivera's waist during the fight. After that, Maldonado was "the maddest [his son] had ever seen him" and breathing like he was having an asthma attack. Maldonado's friend Garcia also testified that Maldonado and Rivera argued, and Rivera threw the first punch. According to Garcia, Rivera got the better of Maldonado during the fight and had a gun.

{¶ 28} Moreover, from the evidence contained in the record as a whole, construed in a light most favorable to Maldonado, a reasonable jury could find that he established by a preponderance of the evidence the existence of provocation.

{¶ 29} This assigned error is well-taken. The felonious assault convictions are reversed and remanded for a new trial to include an instruction on the lesser offense of aggravated assault.

### Sufficiency of the Evidence

{¶ 30} In the second assigned error, Maldonado argues that his convictions are not supported by sufficient evidence. He asserts that there is no evidence that the shooting was committed with a firearm as opposed to a BB gun or pellet gun. He also asserts that the state's evidence indicated that the shooting occurred from a private driveway, and not a public road or highway as required under R.C. 2923.162.

He additionally argues that the felonious assault convictions are not supported due to lack of evidence that the shooter "even shot in the direction of the * * * victims so as to knowingly expect to cause physical harm."

{¶ 31} A sufficiency challenge requires a court to determine whether the state has met its burden of production at trial and to consider not the credibility of the evidence, but whether, if credible, the evidence presented would support a conviction. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *following*, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32.

{¶ 32} Turning to the conviction for discharge of a firearm on or near prohibited premises, the state's evidence indicated that Rojas's family experienced ongoing problems from Maldonado's family after the dog-bite-related eviction. The record demonstrates that Rivera and Maldonado got into a physical fight at the gas

station immediately after Rojas's house and car were egged. According to Rivera, Maldonado threatened retaliation. About fifteen to twenty minutes after the fight with Rivera at the gas station, while Rojas and her family were in the driveway, Maldonado was observed in the white truck during the shooting. Rojas was struck in the neck. As to Maldonado's argument that no eyewitness testimony places him at the scene, both Rojas and A.S. observed him in the white truck during the shooting. A.S. identified Maldonado in a photo array and again in court as the assailant.

{¶ 33} Maldonado also complains that there is insufficient evidence to support of discharge of firearm on or near prohibited premises under R.C. 2923.162 because Rojas testified that the shooter was in her driveway, so she did not establish that he discharged a firearm upon or over a public road or highway. We agree that Rojas testified that the shooter was positioned in the driveway, and not on a public road as required under R.C. 2923.162. However, A.S. testified that Maldonado was in the white truck and that it was positioned partially on the driveway and partially on the road. The cartridge was discovered on the street, not the driveway. As to Maldonado's claim that there was insufficient evidence that he shots came from a firearm, as opposed to a BB gun, Rojas and A.S. testified that they heard shots, and the state's evidence indicated that a .22 caliber cartridge was recovered from the street.

{¶ 34} There is sufficient evidence to support this conviction.

{¶ 35} In the fourth assigned error, this court reversed the felonious assault convictions and remanded them for retrial to include an instruction on aggravated assault. Solely for purposes of determining that retrial is proper, we conclude that the felonious assault convictions are supported by sufficient evidence. As to Maldonado's argument that no eyewitness testimony places him at the scene, both Rojas and A.S. observed him in the white truck during the shooting. A.S. identified Maldonado in a photo array and again in court as the assailant. As to Maldonado's claim that the shooter did not aim at any individual, we note that in *State v. Norris*, 8th Dist. Cuyahoga No. 91000, 2009-Ohio-34, this court rejected this same argument and stated:

> Norris contends that Zackery's testimony that she "wasn't shooting directly at anybody," supports, if anything, a conviction for negligent assault, because the evidence does not demonstrate that she acted "knowingly," a necessary element of felonious assault. We disagree.
>
> It is common knowledge that a firearm is an inherently dangerous instrumentality, use of which is reasonably likely to produce serious injury or death. *State v. Widner* (1982), 69 Ohio St.2d 267, 270, 431 N.E.2d 1025. Courts have consistently held that shooting a gun in a place where there is risk of injury to one or more persons supports the inference that the offender acted knowingly.

*Id.* at ¶ 19-20.

{¶ 36} This analysis is also applicable herein, and we additionally note that Rojas was struck in the neck during the shooting. Accordingly, this portion of Maldonado's assigned error lacks merit. As to Maldonado's claim that there was insufficient evidence that the shots came from a firearm, as opposed to a BB gun,

Rojas and A.S. testified that they heard shots, and the state's evidence indicated that a .22 caliber cartridge was recovered from the street.

{¶ 37} This assigned error is without merit.

## Manifest Weight of the Evidence

{¶ 38} In the third assigned error, Maldonado argues that his convictions are against the manifest weight of the evidence. He raises many of the same arguments that he previously raised in his sufficiency challenge. He also asserts that the witnesses presented by the state were biased, not credible, and made conflicting and inconsistent claims.

{¶ 39} "[W]eight of the evidence involves the inclination of the greater amount of credible evidence." *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, at 387. Weight of the evidence concerns "the evidence's effect of inducing belief." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, citing *Thompkins* at 386-387. The reviewing court must consider all the evidence in the record, the reasonable inferences, and the credibility of the witnesses to determine "'whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983).

{¶ 40} Furthermore, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. When examining

witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). The factfinder "is free to believe all, some, or none of the testimony of each witness appearing before it." *State v. Ellis*, 8th Dist. Cuyahoga No. 98538, 2013-Ohio-1184, ¶ 18.

{¶ 41} Upon review, we cannot say that the jury lost its way and created a manifest miscarriage of justice by convicting Maldonado of discharging a weapon over prohibited premises. The record indicates that there was ongoing conflict between Rojas's family and Maldonado's family after Maldonado's eviction. On the day of the shooting, while Rojas and her other family members were outside, Maldonado, from a position within the street but near the driveway, was seen shooting at the house, striking Rojas in the neck. From the foregoing, we cannot say that the jury lost its way or created a manifest miscarriage of justice in convicting Maldonado of the offense.

{¶ 42} The third assigned error is without merit.

### Inconsistent Verdicts

{¶ 43} In the fifth assigned error, Maldonado contends that the acquittals on the one-year and three-year firearm specifications are inconsistent with both the conviction for discharging a firearm in violation of R.C. 2923.162 and the five-year "drive-by" firearm specifications.

**{¶ 44}** "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Lovejoy*, 79 Ohio St.3d 440, 683 N.E.2d 1112 (1979), paragraph one of the syllabus.

**{¶ 45}** With regard to the contention that the acquittals on the one-year and three-year firearm specifications are fatally inconsistent with the convictions on the principal offenses, this court recently observed in *State v. Amey*, 2018-Ohio-4207, 120 N.E.3d 503 (8th Dist.):

> Amey relies on *State v. Koss*, 49 Ohio St.3d 213, 551 N.E.2d 970 (1990), in support of his inconsistent-verdicts argument. In that case, the Ohio Supreme Court held that an acquittal on a gun specification but the finding of guilt on the principal offense of voluntary manslaughter for causing the death of a victim with the firearm were inconsistent, and therefore, the voluntary manslaughter conviction was reversed. There was no legal authority or analysis in support of the conclusion reached in that case. *Koss*, in fact, contradicted the Ohio Supreme Court's earlier conclusion on inconsistency between the principal charge and the associated specification. *State v. Perryman*, 49 Ohio St.2d 14, 25-26, 358 N.E.2d 1040, paragraph 3 of the syllabus (1976) ("Where a jury convicts a defendant of an aggravated murder committed in the course of an aggravated robbery, and where that defendant is concurrently acquitted of a specification indicting him for identical behavior, the general verdict is not invalid.").
>
> Although some courts valued *Koss* based on recency, that support has faded. *State v. Given*, 7th Dist. Mahoning No. 15 MA 0108, 2016-Ohio-4746, ¶ 73-75, citing *Perryman* (noting the conflict created by *Koss* and deeming the decision in *Koss* to be of limited value); *see also State v. Lee*, 1st Dist. Hamilton No. C-160294, 2017-Ohio-7377, ¶ 43; *State v. Ayers*, 10th Dist. Franklin No. 13AP-18, 2013-Ohio-5601, ¶ 24. It may be time to consider *Koss* as nothing more than an outlier; however, any such conclusion would be outside the scope of this appeal.

*Id.* at ¶ 17 -18.

{¶ 46} Moreover, this court has consistently held that a not guilty verdict on firearm specifications does not present a fatal inconsistency with a guilty verdict for the principal charge. *State v. Hollins*, 8th Dist. Cuyahoga No. 107642, 2020-Ohio-4290, citing *State v. Jackson*, 8th Dist. Cuyahoga No. 105541, 2018-Ohio-2131, ¶ 8; *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483; *State v. Hardware*, 8th Dist. Cuyahoga No. 93639, 2010-Ohio-4346, ¶ 17, citing *State v. Fair*, 8th Dist. Cuyahoga No. 89653, 2008-Ohio-930; *State v. Robinson*, 8th Dist. Cuyahoga No. 99290, 2013-Ohio-4375. As this court explained in *Fair*, "[i]t is entirely proper for the jury to find appellant guilty of aggravated robbery without a firearm specification." *Id.* at ¶ 26. In *Robinson*, this court further explained:

> Robinson argues that based upon the Ohio Supreme Court's holding in *State v. Evans*, 113 Ohio St.3d 100, 2007-Ohio-861, 863 N.E.2d 113, [stating that completely dependent upon, the existence of the underlying criminal charge] a firearm specification is considered dependent on the underlying charge, and thus the two should be considered the same count. This court, however, has consistently rejected this argument. * * *.
>
> Here, the evidence supported the felony murder, felonious assault, and the discharge of a firearm on or near a prohibited place, the court instructed on the specifications independently and separately, and the convictions on these counts were not dependent upon a finding on the specifications. Accordingly, consistent with this court's precedent, we overrule the tenth assignment of error.

*Robinson*, 2013-Ohio-4375, ¶ 102-103.

{¶ 47} Therefore, the acquittals on the specifications are not fatally inconsistent with the convictions for the principal offenses.

{¶ 48} Maldonado further argues that the convictions on the five-year specification for discharging a firearm from a motor vehicle is fatally inconsistent

with the acquittals on the one-year and three-year firearm specifications. However, as the court in *State v. Crabtree*, 10th Dist. Franklin No. 09AP-1097, 2010-Ohio-3843, explained, "[a]s long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id.* at ¶ 19. "A jury need not deliver rationally consistent verdicts in order for the verdicts to be upheld. * * * As long as sufficient evidence supports the jury's verdict at issue, other seemingly inconsistent verdicts do not undermine the otherwise sufficient evidence." *Id.* *See also State v. Smith*, 10th Dist. Franklin No. 06AP-1165, 2007-Ohio-6772, ¶ 42. Here, we conclude that the evidence supports the fire-year firearm specifications. Moreover, under the evidence presented, it was entirely rational for the jury to have selected the fire-year firearm specification that specifically references the discharge of a firearm from a motor vehicle.

{¶ 49} This assigned error is without merit.

### Sierah's Law

{¶ 50} In the seventh assigned of error, Maldonado argues that the trial court erred in sentencing him under Sierah's Law and requiring him to register as a violent offender.

{¶ 51} Pursuant to R.C. 2903.41, individuals who are convicted of certain violent offenses must register in the Violent Offender Database. Qualifying violent offenses are aggravated murder in violation of R.C. 2903.01; murder in violation of R.C. 2903.02; voluntary manslaughter in violation of R.C. 2903.03; kidnapping in violation of R.C. 2905.01; and second-degree felony abduction in violation of R.C.

2905.02. Attempt, complicity, and conspiracy to commit these offenses are likewise included as qualifying offenses.

{¶ 52} Here, the state concedes that Sierah's Law is inapplicable to Maldonado. Upon our review, we agree that Sierah's law is inapplicable in this matter because Maldonado was not convicted of a qualifying offense.

{¶ 53} This assigned error is well taken.

## Ineffective Assistance of Counsel

{¶ 54} In the sixth assigned error, Maldonado argues that he received ineffective assistance of counsel at his trial. He complains that his trial counsel did not seek the dismissal of the five-year firearm specification, did not argue for an instruction on the lesser offense of aggravated assault, ineffectively advocated for the lesser offense of improperly handling a firearm in a motor vehicle, and did not challenge application of Sierah's Law during sentencing.

{¶ 55} In order to establish a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below an objective standard of reasonable representation. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. Second, a defendant must also demonstrate that he or she was prejudiced by counsel's performance. *Id.* To show that he or she has been prejudiced by counsel's deficient performance, the defendant must prove that, but for counsel's errors, the result of the trial would have been different. *Bradley* at paragraph three of the syllabus.

{¶ 56} Herein, the claim regarding the inapplicability of the five-year firearm specification for discharging a firearm from a motor vehicle to the charge of discharge of a firearm on or near prohibited premises is now moot, in light of this court's disposition of the first assigned error.

{¶ 57} Turning to the next portion of the assigned error regarding the instruction for aggravated assault, we note that Maldonado's counsel did advocate for an instruction on a lesser charge and repeatedly elicited questions designed to probe Maldonado's state during and after the fight with Rivera. (Tr. 942.) Therefore, we find no trial error as required under the first component of the *Strickland* analysis. This portion of the assigned error lacks merit.

{¶ 58} Turning next to Maldonado's complaint challenging the efficacy of his trial counsel's argument for a lesser instruction of improperly handling a firearm in a motor vehicle, the evidence did not indicate that Maldonado simply discharged a weapon or improperly transported it within R.C. 2923.16. Rather, the evidence demonstrated that there were continuing problems between Maldonado's family and Rojas's family, multiple shots were fired following the fight with Rivera, and one of the shots struck Rojas in the neck. Therefore, counsel could have reasonably concluded that additional argument would have been futile. This portion of the assigned error lacks merit.

{¶ 59} Finally, the argument regarding Sierah's law is moot. App.R. 12(A)(1)(c).

{¶ 60} The sixth assigned error is without merit.

{¶ 61} The conviction for discharge of a firearm on or near prohibited premises is affirmed but remanded for resentencing, and the felonious assault convictions are reversed and remanded for a new trial.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE
LARRY A. JONES, SR., J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN PART,
CONCURS IN JUDGMENT ONLY IN PART,
AND DISSENTS IN PART WITH SEPARATE OPINION

MARY EILEEN KILBANE, J., CONCURRING IN PART, CONCURRING IN JUDGMENT ONLY IN PART, AND DISSENTING IN PART WITH SEPARATE OPINION:

{¶ 62} I concur with the majority opinion as to Maldonado's first, second, third, fifth, and seventh assignments of error. I respectfully dissent as to the fourth assignment of error, and I respectfully concur in judgment only as to Maldonado's sixth assignment of error.

{¶ 63} The majority found merit to Maldonado's fourth assignment of error, which stated:

> The trial court erred when it failed to instruct the jury on aggravated assault, an inferior offense to felonious assault, which was overwhelmingly supported by the testimony at trial.

{¶ 64} The parties agree that the plain error standard governs this assignment of error. "[W]here the failure to request a jury instruction is the result of a deliberate, tactical decision on the part of trial counsel, it is not plain error." *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 44, citing *State v. Clayton*, 62 Ohio St.2d 45, 47-48, 402 N.E.2d 1189 (1980). I would not find plain error in the trial court's failure to instruct the jury on the offense of aggravated assault as an inferior offense of felonious assault. Even if a different standard of review applied, I would find that it was within the trial court's discretion to decline to instruct on aggravated assault in light of Maldonado's defense that he was not the shooter and the evidence that Maldonado was not provoked before the shooting.

{¶ 65} Maldonado testified that he drove home immediately after the gas station incident and was not present at the shooting. As to provocation, although

his son testified that Maldonado was angrier than he had ever seen him and was gripping the steering wheel of the truck during the gas station incident, Maldonado contradicted this testimony. (Tr. 1007-1008.) Maldonado also testified, "I mean, I was mad. I wasn't like fiery mad. I was just — I was more concerned and upset." (Tr. 1006.) Thus, Maldonado's own testimony undermines a finding of provocation that would be necessary to merit an instruction on the inferior aggravated assault.

{¶ 66} I would find that Maldonado pursued a complete defense strategy rather than invite a conviction of an inferior offense based on evidence of provocation. While his trial counsel requested certain other lesser offense instructions, he did not request an instruction on the inferior offense of aggravated assault, which indicates both his trial strategy and how he viewed the evidence. Requesting an instruction on the inferior offense of aggravated assault would have been inconsistent with Maldonado's complete-defense strategy and his testimony that he was not at the shooting and was not "fiery mad" before the shooting. That the trial court chose not to instruct on the inferior offense sua sponte indicates that the court similarly did not consider the evidence sufficient to support a finding of provocation.

{¶ 67} Maldonado's trial counsel did not seek an instruction on aggravated assault and the trial court did not attempt to instruct on the inferior offense. Finding plain error under these circumstances would hold the trial court responsible for Maldonado's deliberate decision to not pursue an instruction on the inferior offense and permit Maldonado to retroactively benefit from a strategy he declined to pursue.

**{¶ 68}** Accordingly, I would find that the court did not commit plain error in failing to instruct on the inferior offense. *See State v. Clayton*, 62 Ohio St.2d 45, 47-48, 402 N.E.2d 1189 (1980) (no plain error for failure to instruct on lesser-included offense where the defendant pursued a complete defense and waived a lesser-included offense instruction). *See also State v. McCullough*, 8th Dist. Cuyahoga No. 67786, 1995 Ohio App. LEXIS 3377, *6 (Aug. 17, 1995); *State v. Lockett*, 8th Dist. Cuyahoga No. 53334, 1988 Ohio App. LEXIS 534, 8-10 (Feb. 18, 1988); *State v. Brown*, 8th Dist. Cuyahoga No. 52593, 1988 Ohio App. LEXIS 3020, *5-6 (July 28, 1988); *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 45; *State v. Glagola*, 5th Dist. Stark No. 2003CA00006, 2003-Ohio-6018, ¶ 22.

**{¶ 69}** In finding error in the absence of an inferior offense instruction, the majority opinion relies on *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207. But *Wine* considered a different question and involved a different standard than this case. In *Wine*, the court considered whether "a defendant may prevent the trial court from instructing the jury as to a lesser included offense that is warranted by the evidence produced at trial." *Wine* at ¶ 31. The court found a defendant may not do so and affirmed the appellate court's judgment, which held that the trial court did not abuse its discretion by instructing the jury on lesser included offenses. *Id.* at ¶ 13, 35. In contrast, Maldonado asks this court to find plain error where the trial court did not instruct on the inferior offense and where trial counsel did not request an inferior-offense instruction.

{¶ 70} In *Wine*, the court distinguished *State v. Clayton*, 62 Ohio St.2d 45, 47-48, 402 N.E.2d 1189 (1980), calling it a "much different case" because "in *Clayton*, the defendant claimed that the trial court erred in not instructing the jury on lesser included offenses, whereas here Wine argues that the court erred in giving lesser-included-offense instructions." *Wine* at ¶ 27. As in *Clayton*, Maldonado now claims that the trial court erred in not instructing on the inferior offense, even though Maldonado never requested such an instruction at trial.

{¶ 71} According to the *Wine* court, *Clayton* stands for the proposition "that the trial court's failure to instruct the jury on lesser included offenses and the defendant's subsequent conviction '[did] not amount to a manifest miscarriage of justice and [was] not plain error.'" *Wine* at ¶ 30, quoting *Clayton* at 47-48. The *Wine* court further explained,

> *Clayton* establishes the consequences that follow a defendant's decision to waive a jury instruction that may have inured to his benefit. But *Clayton* does not say that a defendant may *prevent* the trial court from instructing the jury as to a lesser included offense that is warranted by the evidence produced at trial.

*Wine* at ¶ 31.

{¶ 72} I find that *Clayton*, not *Wine*, controls here. This is not a case, as in *Wine*, where the defendant sought to prevent the trial court from instructing as to an inferior or lesser offense. The trial court did not seek to give an inferior instruction and Maldonado's trial counsel did not request an inferior instruction. Under *Clayton*, I would not find plain error in the trial court's failure to instruct on the inferior offense because Maldonado did not request such an instruction and

therefore waived any right to benefit from that decision on appeal. Even if Maldonado did request an aggravated assault instruction, I would find that it was within the trial court's discretion to decline to give the inferior instruction where Maldonado's testimony indicated that he was not at the shooting and that he was not provoked to rage by the gas station incident before the shooting.

{¶ 73} Moving to Maldonado's sixth assignment of error, I respectfully concur in judgment only regarding whether counsel's failure to request an instruction for the inferior offense of aggravated assault amounted to ineffective assistance. The sixth assignment of error states:

> Appellant's convictions must be vacated as a result of ineffective assistance of trial counsel.

{¶ 74} The majority found that Maldonado's trial counsel advocated for an instruction on a lesser charge and "elicited questions designed to probe Maldonado's state during and after the fight with Rivera." Failing to request an instruction on an inferior offense does not rise to the level of ineffective assistance of counsel where trial counsel's strategy was to obtain an acquittal rather than a conviction of an inferior offense. *State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 99; *State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-4847, ¶ 18; *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2017-Ohio-5573, ¶ 53-54. I would find that trial counsel did not request an instruction on the inferior offense of aggravated assault and that his failure to do so does not arise to ineffective assistance of counsel.